SPECHT *v.* PATTERSON, WARDEN, ET AL.

No. 831. Argued March 21, 1967.—
Decided April 11, 1967.

*Michael A. Williams,* by appointment of the Court, 385 U. S. 997, argued the cause for petitioner. With him on the brief was *Hugh A. Burns.*

*John E. Bush,* Assistant Attorney General of Colorado, argued the cause for respondents. With him on the brief were *Duke W. Dunbar,* Attorney General, *Frank E. Hickey,* Deputy Attorney General, and *John P. Moore,* Assistant Attorney General.

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

We held in *Williams* v. *New York,* 337 U. S. 241, that the Due Process Clause of the Fourteenth Amendment did not require a judge to have hearings and to give a convicted person an opportunity to participate in those hearings when he came to determine the sentence to be imposed. We said:

> "Under the practice of individualizing punishments, investigational techniques have been given an important role. Probation workers making reports of their investigations have not been trained to prosecute but to aid offenders. Their reports have been given a high value by conscientious judges who want to sentence persons on the best available information rather than on guesswork and inadequate information. To deprive sentencing judges of this kind of information would undermine modern penological procedural policies that have been cautiously adopted throughout the nation after careful consideration and experimentation. We must recognize that most of the information now relied upon by judges to guide them in the intelligent imposition of sentences would be unavailable if information were restricted to that given in open court by witnesses subject to cross-examination. And the modern probation report draws on information concerning every aspect of a defendant's life. The type and extent of this information make totally impractical if not impossible open court testimony with cross-examination. Such a procedure could endlessly delay criminal administration in a retrial of collateral issues." *Id.,* 249–250.

That was a case where at the end of the trial and in the same proceeding the fixing of the penalty for first

degree murder was involved—whether life imprisonment or death.

The question is whether the rule of the *Williams* case applies to this Colorado case where petitioner, having been convicted for indecent liberties under one Colorado statute that carries a maximum sentence of 10 years (Colo. Rev. Stat. Ann. § 40–2–32 (1963)) but not sentenced under it, may be sentenced under the Sex Offenders Act, Colo. Rev. Stat. Ann. §§ 39–19–1 to 10 (1963), for an indeterminate term of from one day to life without notice and full hearing. The Colorado Supreme Court approved the procedure, when it was challenged by habeas corpus (153 Colo. 235, 385 P. 2d 423) and on motion to set aside the judgment. 156 Colo. 12, 396 P. 2d 838. This federal habeas corpus proceeding resulted, the Court of Appeals affirming dismissal of the writ, 357 F. 2d 325. The case is here on a petition for certiorari, 385 U. S. 968.

The Sex Offenders Act may be brought into play if the trial court "is of the opinion that any . . . person [convicted of specified sex offenses], if at large, constitutes a threat of bodily harm to members of the public, or is an habitual offender and mentally ill." § 1. He then becomes punishable for an indeterminate term of from one day to life on the following conditions as specified in § 2:

> "(2) A complete psychiatric examination shall have been made of him by the psychiatrists of the Colorado psychopathic hospital or by psychiatrists designated by the district court; and
>
> "(3) A complete written report thereof submitted to the district court. Such report shall contain all facts and findings, together with recommendations as to whether or not the person is treatable under the provisions of this article; whether or not the person should be committed to the Colorado state

> hospital or to the state home and training schools as mentally ill or mentally deficient. Such report shall also contain the psychiatrist's opinion as to whether or not the person could be adequately supervised on probation."

This procedure was followed in petitioner's case; he was examined as required and a psychiatric report prepared and given to the trial judge prior to the sentencing. But there was no hearing in the normal sense, no right of confrontation and so on.

Petitioner insists that this procedure does not satisfy due process because it allows the critical finding to be made under § 1 of the Sex Offenders Act (1) without a hearing at which the person so convicted may confront and cross-examine adverse witnesses and present evidence of his own by use of compulsory process, if necessary; and (2) on the basis of hearsay evidence to which the person involved is not allowed access.

We adhere to *Williams* v. *New York, supra;* but we decline the invitation to extend it to this radically different situation. These commitment proceedings whether denominated civil or criminal are subject both to the Equal Protection Clause of the Fourteenth Amendment as we held in *Baxstrom* v. *Herold,* 383 U. S. 107, and to the Due Process Clause. We hold that the requirements of due process were not satisfied here.

The Sex Offenders Act does not make the commission of a specified crime the basis for sentencing. It makes one conviction the basis for commencing another proceeding under another Act to determine whether a person constitutes a threat of bodily harm to the public, or is an habitual offender and mentally ill. That is a new finding of fact (*Vanderhoof* v. *People,* 152 Colo. 147, 149, 380 P. 2d 903, 904) that was not an ingredient of the offense charged. The punishment under the second Act is criminal punishment even though it is designed

not so much as retribution as it is to keep individuals from inflicting future harm.[1]  *United States v. Brown,* 381 U. S. 437, 458.

. The Court of Appeals for the Third Circuit in speaking of a comparable Pennsylvania statute [2] said:

> "It is a separate criminal proceeding which may be invoked after conviction of one of the specified crimes.  Petitioner therefore was entitled to a full judicial hearing before the magnified sentence was imposed.  At such a hearing the requirements of due process cannot be satisfied by partial or niggardly procedural protections.  A defendant in such a proceeding is entitled to the full panoply of the relevant protections which due process guarantees in state criminal proceedings.  He must be afforded all those

[1] Provisions for probation are provided (Colo. Rev. Stat. Ann. § 39–19–5–(3) (1963)); and the Board of Parole has broad powers over the person sentenced.  (Colo. Rev. Stat. Ann. §§ 39–19–6 to 10 (1963)).

[2] The Pennsylvania statute (Pa. Stat., Tit. 19, §§ 1166–1174 (1964)) provides that if a court is of the opinion that a person convicted before it of certain sex offenses "if at large, constitutes a threat of bodily harm to members of the public, or is an habitual offender and mentally ill," it may, "in lieu of the sentence now provided by law," sentence the person to a state institution for an indeterminate period, from one day to life.  Pa. Stat., Tit. 19, § 1166 (1964).  The sentence is imposed only after the defendant has undergone a psychiatric examination and the court has received a report containing all the facts necessary to determine whether it shall impose the sentence under the act.  Pa. Stat., Tit. 19, § 1167 (1964).  If the court, after receiving the report, "shall be of the opinion that it would be to the best interests of justice to sentence such person under the provisions of [the] act, he shall cause such person to be arraigned before him and sentenced to" a state institution designated by the Department of Welfare.  Pa. Stat., Tit. 19, § 1170 (1964).  After a person is sentenced under the act, the state Board of Parole has exclusive control over him.  Pa. Stat., Tit. 19, § 1173 (1964).

safeguards which are fundamental rights and essential to a fair trial, including the right to confront and cross-examine the witnesses against him." *Gerchman v. Maroney,* 355 F. 2d 302, 312.

We agree with that view. Under Colorado's criminal procedure, here challenged, the invocation of the Sex Offenders Act means the making of a new charge leading to criminal punishment. The case is not unlike those under recidivist statutes where an habitual criminal issue is "a distinct issue" (*Graham v. West Virginia,* 224 U. S. 616, 625) on which a defendant "must receive reasonable notice and an opportunity to be heard." *Oyler v. Boles,* 368 U. S. 448, 452; *Chandler v. Fretag,* 348 U. S. 3, 8. Due process, in other words, requires that he be present with counsel, have an opportunity to be heard, be confronted with witnesses against him, have the right to cross-examine, and to offer evidence of his own. And there must be findings adequate to make meaningful any appeal that is allowed. The case is therefore quite unlike the Minnesota statute [3] we considered in *Minnesota v. Probate Court,* 309 U. S. 270, where in a proceeding to have a person adjudged a "psychopathic personality" there was a hearing where he was represented by counsel and could compel the production of witnesses on his behalf. *Id.,* at 275. None of these procedural safeguards

---

[3] The Minnesota statute (Chapter 369 of the Laws of Minnesota of 1939) provided that the laws relating to persons found to be insane were to apply to "persons having a psychopathic personality." It defined the term "psychopathic personality" as meaning the existence in a person of certain characteristics which rendered him "irresponsible for his conduct with respect to sexual matters and thereby dangerous to other persons." The statute was not criminal in nature, and was not triggered by a criminal conviction. A person found to have a "psychopathic personality" would be committed, just as a person found to be insane. See Mason's Minn. Stat. c. 74, § 8992–176 (1938 Supp.).

we have mentioned is present under Colorado's Sex Offenders Act. We therefore hold that it is deficient in due process as measured by the requirements of the Fourteenth Amendment. *Pointer* v. *Texas,* 380 U. S. 400.

*Reversed.*

MR. JUSTICE HARLAN agrees with the conclusions reached by the Court, but upon the premises set forth in his opinion concurring in the result in *Pointer* v. *Texas,* 380 U. S. 400, 408.