(July 12, 1967)

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. EDWIN J. LEISEN, Appellant.

MEMORANDUM: Judgment of the County Court, Nassau County, rendered October 7, 1966, convicting him, on his plea of guilty, of second degree assault with intent to commit sodomy, and sentencing him to imprisonment for one day to life, affirmed.

MUNDER, J. (dissenting). I dissent and vote to remit the matter for presentence hearing and resentence.

On April 27, 1965 appellant was indicted for sodomy in the first degree, carnal abuse as a felony, second-degree assault, and endangering the life, health and morals of his daughter Kathleen. On May 23, 1966, while represented by counsel, he withdrew his plea of not guilty to the indictment, and interposed a plea of guilty to a charge of second degree assault with intent to commit sodomy, in satisfaction of the indictment.

Thereafter, by the court's direction, pursuant to section 2189-a of the Penal Law, a psychiatric examination of appellant was conducted in the manner prescribed by sections 659, 660, 661 and 662-e of the Criminal Code. A written report thereof was presented to the sentencing court, as was appellant's own psychiatric report, obtained through private resources.

However, appellant was not permitted to examine the contents of the court-appointed psychiatrist's report, nor was he permitted to put his own doctor on the witness stand to testify in his behalf. He was not given an opportunity directly to confront and cross-examine opposing witnesses; his counsel did not specifically request a hearing at which such cross-examination would be possible.

On October 7, 1966 appellant was sentenced to imprisonment for an indeterminate term of one day to life (Penal Law, §§ 243, 2189-a).

Appellant argues that the procedure by which this sentence was imposed violates the "due process" requirement of the Fourteenth Amendment. Specifically, he contends that, since he was not afforded the opportunity to controvert, by means of his own witnesses and other proofs, the conclusions of the psychiatric report prepared pursuant to section 2189-a of the Penal Law, his rights under the Sixth and Fourteenth Amendments were violated (citing *Specht* v. *Patterson*, 386 U. S. 605, and *United States ex rel. Gerchman* v. *Maroney*, 355 F. 2d 302).

The Supreme Court, in *Williams* v. *New York* (337 U. S. 241) held that the "due process" clause of the Fourteenth Amendment did not require that the sentencing court hold hearings, and give the convicted person the opportunity to participate therein, with regard to the determination of the sentence to be imposed; specifically involved was the right of the sentencing court to rely on a probation officer's report, and on similar extra-record data.

In *Specht* (*supra*) the Supreme Court held that the rule of the *Williams* case did not apply to commitment proceedings under the Colorado Sex Offenders Act (Col. Rev. Stat. Ann., §§ 39-19-1 to 39-19-10 [1963]). Petitioner could not be sentenced to an indefinite term of from one day to life without notice and a full hearing. The court said (386 U. S. 605, 608):

"We adhere to *Williams* * * * but we decline the invitation to extend it to this radically different situation. * * *

"The Sex Offenders Act does not make the commission of an enumerated crime the basis for sentencing. It makes one conviction the basis for commencing another proceeding under another Act to determine whether a person constitutes a threat of bodily harm to the public, or is an habitual offender and mentally ill. That is a new finding of fact * * * that was not an ingredient of the offense charged."

In *Maroney* (*supra*) the Court of Appeals for the Third Circuit had dealt in a similar manner with the corresponding Pennsylvania statute, the Barr-Walker Act (Purdon's Pa. Stat. Ann., tit. 19, §§ 1166–1174). The Third Circuit did not find *Williams* dispositive of the case before it, since (355 F. 2d 302, 312): "The evidence necessary to establish an essentially independent element [i.e., that the petitioner, 'if at large, constitutes a threat of harm to members of the public' and 'that it would be to the best interests of justice' to impose an indefinite sentence] was * * * received here not to aid in any discretionary determination, but rather to arrive at a finding of fact after which a mandatory punishment followed in which the court had no discretion. This is entirely unlike a sentencing procedure". *Maroney* was cited with approval by the Supreme Court in *Specht*. In both cases the lower courts had relied on *Williams*.

We are now confronted with the question of the impact of the *Specht* and *Maroney* decisions on New York's statutory provisions for the treatment of sex offenders (i.e., L. 1950, ch. 525). This comprehensive legislation made a new form of sentence, the indefinite one-day-to-life sentence, available to the sentencing court in the case of a person convicted of certain specific sex offenses; it also required that the court, before it could impose such a sentence, have before it a recent psychiatrist's report, based on a post-conviction examination of the defendant.

In my opinion, the New York statutes involved in this case are not only similar in purpose to the Colorado and Pennsylvania statutes struck down in *Specht* and *Maroney,* but are procedurally similar as well. These similarities are apparent not only on the face of the statutes, but also in the way they have been construed in their respective jurisdictions.

The Colorado statute declares that it was enacted "for the better administration of justice and the more efficient punishment, treatment, and rehabilitation" of persons convicted of specified sex offenses (Col. Rev. Stat. Ann., § 39-19-1). The Pennsylvania statute contains an almost identical declaration (Purdon's Pa. Stat. Ann., tit. 19, § 1166).

In New York, the interim report to Governor Dewey on the study of sex offenders served as the basis for the subsequent omnibus legislation. Recommendations III and IV in that report suggested that efficient and improved administration of justice and treatment of sex offenders would be facilitated

by the measures proposed. The Governor's message to the Legislature (N. Y. Legis. Annual, 1950, pp. 334–336), repeated these contentions.

In sum, the three statutes are identical in purpose.

Section 39-19-1 of the Colorado statute provides that: "if the district court is of the opinion that any such person, if at large, constitutes a threat of bodily harm to members of the public, or is an habitual offender and mentally ill, the district court in lieu of the sentence now provided by law, for each such crime, may sentence such person to a state institution for an indeterminate term having a minimum of one day and a maximum of his natural life."

The statute continues:

"39-19-2. Requirements before sentencing.— (1) No person, convicted of a crime punishable in the discretion of the district court, under the provisions of this article, with imprisonment in a state institution for an indeterminate term having a minimum of one day and a maximum of his natural life, shall be so sentenced until:

"(2) A complete psychiatric examination shall have been made of him by the psychiatrists of the Colorado psychopathic hospital or by psychiatrists designated by the district court; and

"(3) A complete written report thereof submitted to the district court. Such report shall contain all facts and findings, together with recommendations as to whether or not the person is treatable under the provisions of this article; whether or not the person should be committed to the Colorado state hospital or to the state home and training schools as mentally ill or mentally deficient. Such report shall also contain the psychiatrist's opinion as to whether or not the person could be adequately supervised on probation." The wording of the provisions of the Pennsylvania statute (tit. 19, §§ 1166, 1167) is virtually the same.

In New York, the 1950 legislation added the following words to section 243 of the Penal Law: "provided, however, any person convicted of assault in the second degree for an assault upon another with intent to commit the felony of rape in the first degree, rape in the second degree, sodomy in the first degree, sodomy in the second degree or carnal abuse may be punished by imprisonment for an indeterminate term, the minimum of which shall be one day and the maximum of which shall be the duration of his natural life."

Similar language was added to sections 483-a, 483-b, 690, 1944-a, and 2010 of the Penal Law, which set forth the penalties for other sex offenses. These changes in the law were co-ordinated by, and functionally related to, section 2189-a of the Penal Law, a wholly new provision added by the 1950 legislation. It declared that: "*No person convicted of a crime punishable in the discretion of the court with imprisonment for an indeterminate term, having a minimum of one day and a maximum of his natural life, shall be sentenced until a psychiatric examination shall have been made of him and a complete written report thereof* shall have been *submitted to the court*. Such examinaiton shall be made in the manner prescribed by section six hundred fifty-nine, six hundred sixty, six hundred sixty-one and six hundred sixty-two-e of the code of criminal procedure. *Such report shall include all facts and findings necessary to assist the court* in imposing sentence." (Italics supplied.)

The text of the Governor's message, subsequently enacted into law by the legislation outlined above, described the contents of the proposed changes as follows: "[The interim report on sex offenders] proposes that, *in cases of sex crime,* involving violence or the sexual abuse of children, *a new form of sentence be made optional with the Court. It would require that all persons found guilty of such offenses be psychiatrically examined before sentencing* and provide that, *with such psychiatric information before it, the Court may impose*

*a sentence of from one day to life."* (Emphasis added.) (N. Y. Legis. Annual, 1950, p. 335.)

In sum, the Colorado, Pennsylvania and New York legislation are essentially identical as to content and are quite similar as to form. The same presentencing procedure is provided by each. The only noticeable distinction is a purely formalistic one, based on the draftsman's approach; Colorado and Pennsylvania enacted the alternative, indefinite term sentence in a single provision which was keyed to related portions of the penal statutes, while New York inserted this provision piece-meal into the relevant provisions. All three States made it mandatory for the sentencing court to order the psychiatric examination of anyone convicted of those crimes for which it was possible to impose .an indefinite sentence, before sentence could be imposed.

The New York courts, while holding that section 2189-a of the Penal Law compelled the sentencing court to order a presentence psychiatric examination, also held that the court was not compelled to accept either the psychiatrist's findings, or his recommendation as to sentence (*People* v. *Spry,* 5 A D 2d 835; *People* v. *Murtha,* 20 A D 2d 968; *People* v. *Rhodes,* 21 A D 2d 906, affd. 15 N Y 2d 729, cert. den. 382 U. S. 859).

The retention of this discretionary power in the sentencing court does not distinguish the New York statute from those of Colorado and Pennsylvania, however. The Colorado State courts, prior to *Specht* (386 U. S. 605, *supra*) also held that the court in determining sentence was not bound by the psychiatrist's report, and that the statute was not intended to limit or restrict the court in the exercise of its judgment (*Trueblood* v. *Tinsley,* 148 Col. 503 [1961], cert. den. 370 U. S. 929 [1962]; *Vanderhoof* v. *People,* 152 Col. 147; *Sutton* v. *People,* 156 Col. 201). The Tenth Circuit construed the statute similarly (*Trueblood* v. *Tinsley,* 316 F. 2d 783 [1963]).

The Colorado courts relied on their prior decision in *Trueblood,* and on the Supreme Court decision in *Williams* (337 U. S. 241, *supra*), in earlier phases of the *Specht* litigation (*Specht* v. *Tinsley,* 153 Col. 235, 238 [1963]; *Specht* v. *People,* 156 Col. 12 [1964]). The Tenth Circuit relied on its earlier decision in *Trueblood,* and on *Williams,* when it upheld the Colorado statute (*Specht* v. *Patterson,* 357 F. 2d 325 [1966]). The Supreme Court, as noted, thereafter reversed, holding *Williams* inapplicable.

Similarly, the Pennsylvania courts did not regard the sentencing court as confined to, or by, the psychiatrist's report (see *Commonwealth ex rel. Gerchman* v. *Maroney,* 203 Pa. Super. Ct. 293). The constitutionality of the Pennsylvania statute was then upheld by the State courts (*Commonwealth ex rel. Gerchman* v. *Maroney, supra,* allocatur refused 204 Pa. Super. Ct. xl; *Commonwealth ex rel. Hoffman* v. *Maroney,* 203 Pa. Super. Ct. 303, allocatur refused 204 Pa. Super. Ct. xli).

The United States District Court for the Western District of Pennsylvania, relying on the State decisions and on *Williams,* thereafter denied habeas corpus, on the ground that there had been no denial of procedural due process (*United States ex rel. Gerchman* v. *Maroney,* 235 F. Supp. 588 [W. D. Pa., 1964]). The Court of Appeals for the Third Circuit, as noted, thereafter reversed, holding *Williams,* inapplicable (*United States ex rel. Greenman* v. *Maroney,* 355 F. 2d 302, *supra*).

In sum, the State courts of Colorado and Pennsylvania construed and applied their respective sex offender statutes exactly as the courts of New York have those of this State. Relying on this interpretation, and on the Supreme Court decision in *Williams,* the Tenth Circuit (*Specht*) and the District Court (*Maroney*) upheld the Colorado and Pennsylvania statutes. Thereafter, the Supreme Court (*Specht*) and the Third Circuit (*Maroney*) held

that *Williams* did not apply to, or protect, the presentencing psychiatric reports required by those statutes. The provisions regarding the preparation and use of such reports were held to be procedurally defective under the Constitution, on the ground that the defendant was denied a constitutionally-guaranteed right of confrontation to which he was entitled because the court's findings could lead to the imposition of an indefinite sentence of one day to life.

In New York, the court is required to make similar findings before imposing such a sentence. Although the statute does not explicitly require that this be done, certain findings are necessarily implicit by the New York sex offender legislation. As was said by Presiding Justice Bergan in the opinion in *People* v. *Jackson* (20 A D 2d 170, 172–173 [3d Dept. 1963]):

"It was envisioned, therefore, as the title of the statute itself suggests, that treatment was an integral and essential part of a program to be followed in the penal system. Where the offender could be treated with some reasonable chance of improvement, it was contemplated that under a sentence so flexible that it might last for his natural life, he would be able to receive adequate treatment and would be discharged if improved to the extent it would be safe to release him.

"It was not contemplated that an offender be held for many years without treatment and without some sound professional basis for believing that during all of this period it would be unsafe to release him."

The court thereafter held that a psychiatrist's report was inadequate where it did not assist the court in determining (p. 174): "whether defendant presents a probable behavior pattern which would render it dangerous to release him now; and if it does, whether such behavior problem can be favorably affected by custodial medical treatment." The reason for the court's insistence that the report include such information was that the court's choice between the alternative sentences which could be imposed *"would depend on the fully-implemented answers to these questions"* (p. 174; emphasis added). Thus, in the case then before the court, the "continuance of imprisonment beyond the normal maximum * * * [was] *based on an expectation of improvement by treatment"* (p. 174; emphasis added).

In sum, the court is required to make certain findings about defendant's mental condition before it can impose the alternative sentence provided by the sex offender legislation of Colorado, Pennsylvania, and New York. The required determination is the same in each State, i.e., that the defendant is amenable to treatment, or that he constitutes an (incurable) threat to society. None of these three statutes required the court to afford defendant the opportunity to challenge the psychiatrist's report prepared for it; yet each statute gave great weight to this report. The Colorado and Pennsylvania statutes have been held to be procedurally defective because of their failure to afford a hearing.

I am of the opinion that New York's sex offender statute is similarly defective, as presently read, and that the Supreme Court's decision in *Williams* is not applicable to a presentencing psychiatrist's report.

*Williams,* as noted, was a highly pragmatic opinion, addressed specifically to the use by a sentencing court of a probation report. The opinion stated, *inter alia,* (337 U. S. 241, 246–247, *supra*): "In addition to the historical basis for different evidentiary rules governing trial and sentencing precedures there are sound practical reasons for the distinction. *In a trial before verdict the issue is whether a defendant is guilty of having engaged in certain criminal conduct of which he has been specifically accused.* Rules of evidence * * * narrowly confine the trial contest to evidence that is strictly relevant to the

particular offense charged. These rules \* \* \* were \* \* \* designed to prevent tribunals concerned solely with the issue of guilt of a particular offense from being influenced to convict for that offense by evidence that the defendant had habitually engaged in other misconduct. *A sentencing judge, however, is not confined to the narrow issue of guilt.* His task within fixed statutory or constitutional limits is to determine the type and extent of punishment after the issue of guilt has been determined. Highly relevant — if not essential — to his selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics." (Emphasis added.)

Prior to imposing sentence pursuant to the New York (or Colorado, or Pennsylvania) sex offender legislation, the sentencing Judge is no longer " confined to the narrow issue of guilt ". However, another " narrow issue " does still remain in the case, i.e., the mental condition and propensities, present and projected, of the convicted person awaiting sentence. The Third Circuit observed, in *Maroney* (*supra*) that the sentencing court, prior to imposing an indefinite sentence " made a new factual finding which went substantially beyond the finding of guilt of assault and battery with intent to [commit a particular sex offense] " (p. 311). Consequently, " the determination of the issues of fact involved \* \* \* must conform to the constitutionally guaranteed safeguards of due process in substantive criminal trials " (*Maroney,* 355 F. 2d 302, 311; see *Specht,* 386 U. S. 605, 608–609 *supra*).

I conclude, for the reasons noted, that the *Specht* and *Maroney* decisions apply to the New York sex offender statute. The relevant New York provisions are thus procedurally defective under the due process clause unless they can be construed to provide that, before a psychiatrist's report prepared pursuant to section 2189-a of the Penal Law may be considered by the sentencing court, the convicted offender shall be afforded an opportunity to controvert the findings therein, at a judicial hearing.

The statute may be so construed (*People ex rel. Kamisaroff* v. *Johnston,* 13 N Y 2d 66, 69 [1963]; *People ex rel. Stock* v. *Terrence,* 11 N Y 2d 362 [1962]; *Matter of Coates,* 9 N Y 2d 242 [1961], app. dsmd., 368 U. S. 34), and I believe it should be.

A hearing with regard to defendant's mental state is not, as a matter of practicality, impossible; the law presently provides for such a hearing for other purposes (Code Crim. Pro., §§ 658–662, especially § 662-a; cf. Penal Law, § 2189-a).

While data indicating defendant's condition may be drawn from the probation report, etc., the Legislature has made a mandatory psychiatrist's report the essential source of certain particularized items of information (*People* v. *Jackson,* 20 A D 2d 170, *supra*). The court must have " fully-implemented answers to these questions " (*People* v. *Jackson, supra,* p. 174). Where the report is inadequate, the defendant cannot be properly sentenced, and the purpose of the statute is defeated. A hearing would provide the court with " fully implemented answers ", and would subject the contents of the psychiatrist's report to the beneficial scrutiny of an adversary proceeding.

In short, such narrow questions as are here involved could and should be the subject of a judicial hearing. A defendant should not be sentenced to imprisonment for the indeterminate term provided by New York's sex offender legislation until he has been given knowledge of the contents of the psychiatrist's report and the opportunity to controvert it.

Although defendant's counsel did not specifically request such a hearing, this failure would not bar him from such relief, since the right was not

known to exist at the time; moreover, I believe that such denial would be improper, since a basic constitutional right is involved (*Maroney*, 355 F. 2d 302, *supra; O'Connor* v. *Ohio*, 385 U. S. 92 [1966]; *People* v. *McLucas*, 15 N Y 2d 167 [1965]).

I think the procedure followed in this case failed to satisfy the requirements for procedural due process. Appellant did not have access to the contents of the psychiatrist's report, nor did he have the opportunity to controvert directly its contents. In the Pennsylvania proceedings against Gerchman, the defendant was represented by counsel at the sentencing, was allowed to speak in his own behalf, and availed himself of the opportunity to have a psychiatrist testify in his behalf (see *Commonwealth ex rel. Gerchman* v. *Maroney*, 203 Pa. Super. Ct. 293). Nevertheless, as noted, the Third Circuit thereafter held that there had not been compliance with the requirements of procedural due process (*Maroney*, 355 F. 2d 302, *supra*).

I conclude, therefore, that:

(1) Chapter 525 of the 1950 Laws of New York, and in particular sections 243 (as amd.) and 2189-a of the Penal Law, are essentially identical in purpose, form and content with the corresponding sex offender statutes of Colorado and Pennsylvania;

(2) the three statutes provide the same sort of presentence psychiatric examination, for the same reasons, at the same point in the proceedings;

(3) the three statutes have been construed and applied in the same way by the courts of their respective jurisdictions;

(4) consequently, the decision of the Supreme Court in *Specht* v. *Patterson* (386 U. S. *supra*) and the decision of the Court of Appeals for the Third Circuit in *United States ex rel. Gerchman* v. *Maroney* (355 F. 2d 302, *supra*) apply to the New York sex offender statute.

Since these decisions apply, section 2189-a of the Penal Law, literally construed, is procedurally defective under the due process clause of the Fourteenth Amendment. However, this provision can be construed to provide that the defendant shall be given notice of the contents of the psychiatrist's report prepared pursuant to section 2189-a and shall be afforded the opportunity to controvert it at a judicial hearing. Such construction, as the Third Circuit decision in *Maroney* (*supra*) indicates, is both possible and consistent with the purposes of the statute; it serves to promote the orderly and fair administration of the law.

This particular defendant was not given the required notice and opportunity. He did not waive his rights. Consequently, he is entitled to a judicial hearing.

I am troubled by the fact that this result would necessitate a hearing in all cases in which the one-day-to-life sentence had been imposed without adherence to proper procedural safeguards (cf. *People* v. *Jiggets*, 28 A D 2d 933, decided herewith). However, in light of the United States Supreme Court's conclusions, I think that this result cannot be avoided.

Beldock, P. J., Christ, Brennan and Benjamin, JJ., concur in memorandum; Munder, J., dissents in opinion.

Judgment of the County Court, Nassau County, affirmed, etc.