**UNITED STATES of America ex rel. Norwood WHITE, Petitioner,**

v.

**STATE OF NEW JERSEY, Respondent.**

**Civ. 1050–67.**

United States District Court
D. New Jersey.

July 15, 1968.

Norwood L. White, pro se.

John G. Thevos, Prosecutor, Passaic County, by Archibald Kreiger, Asst. Prosecutor, for respondent.

## MEMORANDUM AND ORDER

SHAW, District Judge.

This is an application for a writ of habeas corpus pursuant to the provisions of 28 U.S.C.A. § 2241(c) (3).

Petitioner was charged by indictment in the Passaic County Court with com-

mission of the crime of rape in violation of N.J.S.A. 2A:138–1. The applicable language of the statute pursuant to which the indictment was drawn reads:

> Any person who has carnal knowledge of a woman forcibly against her will * * * is guilty of a high misdemeanor and shall be punished by a fine of not more than $5,000 or by imprisonment *for not more than* 30 years, or both. (Emphasis supplied)

Petitioner entered a plea of guilty to the indictment. The trial judge obtained a diagnostic report from the Menlo Park Diagnostic Center pursuant to N.J.S.A. 2A:164–3, 4. Thereafter, on December 11, 1964, the trial court committed petitioner to the New Jersey State Hospital at Trenton, Vroom Building, "for not longer than the maximum term provided for this offense of 15 years." The commitment was pursuant to N.J.S.A. 2A:164–6(b). Petitioner sought leave of the Superior Court of New Jersey, Appellate Division, as an indigent defendant to appeal alleging that he was wrongfully confined to the Vroom Building of the New Jersey State Hospital in Trenton, New Jersey. On June 17, 1966, his application was denied as frivolous and without merit and not timely made. The Court further held that the commitment by the trial judge "was proper under N.J.S. 2A:164–6" and "was in strict accordance with the statute." Petitioner sought a writ of habeas corpus and the Superior Court of New Jersey, Law Division, Mercer County, denied the application on November 21, 1966. In the denial thereof it reiterated the holding of the Appellate Division that the sentence was proper and in strict accordance with the statute.

It appears, however, that prior to the denial of the application for a writ of habeas corpus on November 21, 1966, it came to attention as the result of administrative review of the commitment that the maximum penalty provided for the offense committed was not 15 years but 30 years. As a result petitioner was returned to the Passaic County Court for resentencing on November 4, 1966. Upon resentencing, the trial court stated, "The amended sentence is as follows: New Jersey State Hospital at Trenton, Vroom Building, for an indeterminate term." Petitioner appealed to the Superior Court of New Jersey, Appellate Division, and the court then held that the trial judge erred in the first instance in failing to commit for an indeterminate term and that petitioner, having been convicted of the offense of carnal knowledge of a woman forcibly against her will, was subject to the penalty of a term of imprisonment of not more than 30 years. And having also been found by the trial judge to have been guilty of conduct which placed him in the statutory category where he could be subject to commitment as a sex offender, the trial court was authorized by N.J.S.A. 2A:164–6 to commit him to an institution designated by the Commissioner of Institutions and Agencies for treatment. N.J.S.A. 2A:164–6 reads as follows:

> *The disposition to be made by the court* of such person, upon written report and recommendation of the diagnostic center, shall include 1 or more of the following measures:
>
> a. *The court* may place such person on probation with the requirement, as a condition of said probation, that he receive out-patient psychiatric treatment in the manner to be prescribed in each individual case.
>
> b. Such person may be committed to an institution to be designated by the commissioner of institutions and agencies for treatment, and upon release shall be subject to parole supervision.
>
> In the event that the court shall order a commitment of the person as provided in this section, *such order of commitment shall not specify a minimum period of detention, but in no event shall the person be confined or subject to parole supervision for a period of time greater than that provided by law for the crime of which*

*such person was convicted.* (Emphasis supplied)

■ It is clear from the language of the statute that the trial court was not authorized to specify a minimum *mandatory* period of detention. Petitioner would be entitled under the statute to release at any time after his commitment when it was determined that he had responded to treatment and could be safely returned to society. It is not, however, equally clear that the trial court was without authority to specify *that in no event* could he be confined for a period of time greater than 15 years. The commitment as authorized by statute is made by the court and not by the Commissioner of Institutions and Agencies and to hold that the court could not commit for an indeterminate specified period of confinement less than the maximum of 30 years would be to treat the language "but in no event shall a person be confined * * * for a period of time greater than that provided by law for the crime of which such person was convicted" as surplusage. The overall legislative intent seems to be that whatever the term of confinement up to 30 years for which the defendant is committed would be indeterminate so that he could be released at any time after his commitment when it was demonstrated that treatment was no longer necessary.

■ The question raised here would be one of serious import if the trial judge had clearly specified a maximum period of confinement and then, upon re-sentencing, increased it. But it is not necessary to resolve this question as to legislative intent because the language used by the trial court on the initial commitment demonstrates that he intended to commit for an indeterminate maximum term for the offense committed but was under a misapprehension of what the maximum term was. This is apparent from the statement of commitment of "not longer than the *maximum term provided for this offense.*" (Emphasis supplied.) Reference to 15 years as the maximum term was no doubt the result of inadvertent error in applying the provisions of N.J.S.A. 2A:138–1 to the crime of carnal abuse as distinguished from the crime of carnal knowledge. This error was repeated on first review of the commitment by the Appellate Division. For distinction of the two separate offenses see Application for a Writ of Habeas Corpus of Frederick A. Faas, 42 N.J.Super. 31, 125 A.2d 724, 726 (App.Div.1956). Moreover, since it clearly appears that the trial judge had adopted the penal language of the statute relating to carnal abuse, the initial sentence could be considered a nullity becuase it was imposed for the commission of a crime other than the one to which petitioner entered a plea of guilty.

■ There is, however, another question as to procedural due process. Specht v. Paterson, 386 U.S. 605, 87 S.Ct. 1209, 18 L.Ed.2d 326 (1967); U. S. ex rel. Gerchman v. Maroney, 355 F.2d 302 (3rd Cir. 1966). The record does not indicate that there is any dispute about the fact that petitioner was never shown the diagnostic report which the trial court considered when petitioner was committed under the Sex Offenders Act. Further, it does not appear that this question was ever raised in any of the State court proceedings. It does seem that the report was shown to counsel for petitioner and it is suggested that it was not shown to petitioner because it might "upset him." The right of petitioner to be heard as to the accuracy and probative value of the report is clear. This is a right, however, which he might have waived. There is nothing in the record of the proceedings before the trial court which indicates any objection of his part to the fact that he was not permitted to read the report. Before there could be a waiver, however, there must be a relinquishment of a known right. Johnson v. Zerbst, 304 U. S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); Brookhart v. Janis, 384 U.S. 1, 86 S.Ct. 1245, 16 L.Ed.2d 314 (1966). It does seem from the record before this Court that petitioner had no objection to

the fact that he did not see the diagnostic report and was content to accept commitment for treatment as a sex offender until he learned that the maximum indeterminate term was 30 years. However, the question presented cannot be resolved except upon hearing. Moreover, if it were determined that he had not known of his right to see the report, then opportunity to refute the factual content and conclusions reached in the report should be afforded.

Parenthetically, it may be noted here that there is arguable distinction between the instant case and *Specht* and *Gerchman,* supra. The commitment under the Sex Offenders Act in each of those cases was indeterminate for life as distinguished from the lesser statutory penalty in the absence of such commitment. Specific reference is made in *Gerchman* to "the magnified sentence." But upon careful consideration of such conceivable distinction, this Court is of the opinion that a commitment for an indeterminate period up to 30 years carries more severe implications than a 30 year sentence. Eligibility for parole is indefinite during the period of 30 years. There is confinement in a mental hospital and work without pay and other distinctions which can be made.

The Court concludes that in the interest of comity the State court should have the first opportunity to determine the merit or lack of merit of petitioner's complaint that he was deprived of procedural due process when he was committed under the Sex Offenders Act. In fact, this is suggested by the prosecution in a letter-memorandum to this Court dated December 11, 1967, wherein it is stated, "Reference to the State court proceedings will show that the present claim of invalidity of our statute under the *Specht* case is made here for the first time and accordingly, petitioner should exhaust his State court remedy under that point, which he has not done."

No doubt the prosecution in its reference to the statute had in mind R.R.

3:7–10(c) which provides in pertinent part:

> [T]he court shall before imposing sentence or making disposition of the offender * * * furnish to the defendant *or* his counsel a copy of the report of the Diagnostic Center and shall afford to the offender an opportunity to be heard thereon. * * * (Emphasis supplied)

Accordingly, this Court concludes that petitioner still has an available remedy for post conviction relief pursuant to R.R. 3:10A–1 and that in the interest of comity this Court should refrain from entertaining the petition for a writ of habeas corpus. It is further determined that petitioner has no meritorious ground to appeal from the findings herein made and that a certificate of probable cause for purposes of appeal should not be issued.

Now, therefore, it is on this 15th day of July, 1968, ordered that the petition of petitioner filed herein be and the same is hereby dismissed without prejudice.