**STATE of Missouri, Respondent,**

v.

**James C. GREEN, Jr., Appellant.**

**No. WD 32404.**

Missouri Court of Appeals, *Western District.*

Aug. 3, 1982.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied Oct. 5, 1982.

Application to Transfer Denied Dec. 13, 1982.

James W. Fletcher, Sean D. O'Brien, Kansas City, for appellant.

John Ashcroft, Atty. Gen., Rosalynn Van Heest, Asst. Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before SOMERVILLE, C.J., and PRITCHARD, DIXON, TURNAGE, MANFORD, KENNEDY and NUGENT, JJ.

KENNEDY, Judge.

By the verdict of a jury appellant was found guilty of attempted rape and burglary, and his punishment was set by it at seven and ten years respectively. Thereafter, the trial court held a hearing upon the allegation that appellant was a dangerous offender, and finding that he was, enhanced his punishment to ten and fourteen years, respectively, the sentences to run consecutively, a total of twenty-four years.

The sufficiency of the evidence to sustain the convictions is not questioned. On May 21, 1980, the victim of the attempted rape, being six months pregnant, was in Room 546 at the Osteopathic Hospital. About 9:00 p.m. someone entered her room, sat on her bed, grabbed her by the throat and told her to shut up. He started fondling her breasts and vaginal area. He asked her if he could get in, and she told him, "no, that it would kill my baby". She then heard a jingling noise like a belt unbuckling or something similar. He told her to shut off the call light and grabbed her by the throat, choking and squeezing it. She saw his fist raised, and the overhead light came on and he then got up and ran. Nurse Holman opened the door to Room 546 and saw a man partially on the victim's bed with his hand around her throat and pulling the bedclothes down. The man got off the bed, grabbed his shoes and ran past Nurse Holman, who smelled alcohol on his breath as he did so. Nurse Holman identified appellant as the man she saw get off the elevator across from her desk, and he then went toward the O.B. end of the floor. She saw him 30 minutes later running toward the elevators with his shoes in his hand, being chased by nurses. He was arrested by security guards on the fifth floor of the hospital, at which time his pants were partially unfastened.

In the hearing upon the allegation that appellant was a dangerous offender, Dr. William Hamilton, D.O., testified. He is an obstetrician and a gynecologist, and the victim here was his patient. She was in the hospital because of a premature rupture of the membrane which contained the fetus. The membrane serves as a protection against bacteria which are normally in the vaginal vault, and once broken the bacteria would have access to the uterine cavity, placenta and the cavity itself. In the victim's case, the doctor was trying to prevent delivery by temporary measures to encourage fetal maturity and to keep the patient in a sterile atmosphere. Dr. Hamilton's opinions were that if penetration of the victim had occurred, there would have been

a significant threat of inner-uterine infection, and this was very likely. If infection had occurred, danger to the mother would involve infection of the uterus which could spread to the blood stream. If the infection is localized within the uterus, hysterectomy is usually indicated. If really serious bacteria or spread of the infection to the blood-stream occurs, it could be life-threatening, and death could occur from penetration.

On cross-examination, Dr. Hamilton could not say that an infection from penetration would have occurred to any reasonable medical certainty. The infection could have occurred from any type of septic contamination without any type of intercourse. And,

> "Q. And these things are things which would not be obvious to a lay person, the risk of infection, et cetera, is that correct?
>
> "A. I would think not."

On redirect examination Dr. Hamilton testified that penetration would cause a substantial risk of infection, and that infection would pose a substantial risk of injury to the mother and to the fetus—a serious physical injury. The risk was to both but greater as to the fetus.

The enhancement or extended term statute, before it was amended by Laws 1980, § 558.016, RSMo (L.1977, S.B. No. 60, p. 662, § 1, eff. Jan. 1, 1979), provided:

> 3. A "dangerous offender" is one who:
>
> (1) Is being sentenced for a felony during the commission of which he knowingly murdered or endangered or threatened the life of another person or knowingly inflicted or attempted or *threatened to inflict serious physical injury on another person;* and
>
> (2) Has been previously convicted of a Class A or B felony or of a dangerous felony. (Emphasis supplied.)

There was evidence that appellant had been previously convicted of assault with intent to do great bodily harm without malice, at least a Class B felony.

Under "Code definitions" of § 556.-061(24), RSMo 1978, " 'Serious physical inju-

ry' means *physical injury that creates a substantial risk of death* or that causes serious permanent disfigurement or protracted loss or impairment of the function of any bodily member or organ." (Emphasis supplied.)

Appellant's first point is the evidence was insufficient to support enhancement of his punishment by the trial court in its finding that he "knowingly threatened to inflict serious physical injury on the victim" in that the evidence failed to support that he knew that completion of sexual intercourse with the victim might have caused a serious infection, or that by raising his fist, he manifested a threat or intention to cause serious physical injury.

We disallow appellant's point. In "grabbing", "squeezing" and "choking" (the words of the victim herself) the victim's throat; and holding his fist before her face in a menacing manner; and in undertaking, in the manner described above, to force intercourse upon her, the defendant "knowingly threatened to inflict serious physical injury" upon her, within the meaning of the quoted statute. His seizing and squeezing her throat—at the beginning of the assault, and again when she summoned help by the means of the call light—was a threat of asphyxiation, a "serious physical injury". The threat was enhanced by the upraised fist, cocked to strike.

The defendant may be correct in arguing that he could not be expected to know that intercourse would create a risk of a serious infection, creating a substantial risk both to the fetus and to the mother, a matter for expert medical testimony. The defendant, however, was expressly told by the victim that intercourse "would kill my baby". In the context of this woman's being a patient in the hospital, the warning should have had added meaning to the defendant. Whether intercourse, had it been completed, by itself posed a "substantial risk of death" to the mother is not shown by the evidence nor judicially known to us. We consider it only as showing a certain state of mind of indifference to consequences which, like the upraised fist, colors his actions in threatening to throttle the victim. The trial court's

finding that defendant was a "dangerous offender" is well supported by the evidence recounted in this and the preceding paragraph.

■ Appellant then contends that the court erred in instructing the jury that the court could not exceed the punishment assessed and declared by the jury by its verdict. The instruction complained of was MAI–CR2d 2.60, without modification. Defendant says the jury was misinformed by this instruction, because the punishment was increased by the court under the Dangerous Offender Statute, § 558.016, RSMo 1978 (Cum.Supp.1982). A similar contention has been considered and rejected by our Supreme Court in *State v. Hunter,* 586 S.W.2d 345, 346, 347 (Mo. banc 1979). *See also State v. Van Horn,* 625 S.W.2d 874, 878 (Mo.1981).

Appellant says the court erred in denying his motion for a psychiatric examination in connection with the sentencing hearing. He says such an examination and report would have aided the court in determining if the defendant "knowingly" threatened serious physical injury under the Dangerous Offender Statute. Defendant cites *Specht v. Patterson,* 386 U.S. 605, 87 S.Ct. 1209, 18 L.Ed.2d 326 (1967). That case held with respect to a sentence enhancement statute that:

> Under Colorado's criminal procedure, here challenged, the invocation of the Sex Offenders Act means the making of a new charge leading to criminal punishment. The case is not unlike those under recidivist statutes where an habitual criminal issue is a "distinct issue" ... on which a defendant "must receive reasonable notice and an opportunity to be heard".... Due process, in other words, requires that he be present with counsel, have an opportunity to be heard, be confronted with witnesses against him, have the right to cross-examine, and to offer evidence of his own. And there must be findings adequate to make meaningful any appeal that is allowed.

386 U.S. at 610, 87 S.Ct. at 1212.

Specht does not require the court to order a psychiatric examination. The due process requirements laid down by *Specht* were observed in the present case, and appellant does not claim that they were not.

■ Under § 557.031.1, RSMo 1978, the court may in its discretion require a mental examination for its information in sentencing. But there was no abuse of discretion in not requiring the examination in this case, particularly when the trial court had before him two mental examination reports made in connection with the trial of the charge. One such examination was for the purpose of determining competency to stand trial, and the other one was to determine defendant's competency at the time of the offense. *See State v. Berry,* 609 S.W.2d 948, 955 (Mo. banc 1980).

■ Appellant's last contention is that the trial court erred in overruling his objection to the state's closing argument that "There's absolutely no evidence and no proof that anyone is lying." He says the argument was prejudicial because it shifted the burden to him to prove his innocence. Appellant had argued to the effect that the nurses and other personnel were covering up for not watching the victim carefully. The state's argument was thus retaliatory to that argument as to the credibility of the identification witnesses, and thus no error appears. The state then argued that the evidence was that the victim heard appellant unzip his pants, when the evidence was that she heard a jingling noise like a belt unbuckling or something similar. Although the trial court overruled appellant's objection that the argument was a misstatement of the evidence, it directed the jury to recall the evidence. Then appellant, in his argument, correctly noted the victim's testimony, the court overruled the state's objection, and again admonished the jury to remember the evidence. Under *State v. Sykes,* 571 S.W.2d 456, 459[2] (Mo.App.1978), the trial court's admonition was adequate as a "curative measure" to dispel any possible confusion caused by the state's argument. The point is ruled against appellant.

The judgment is affirmed.

SOMERVILLE, C.J., and DIXON, TURNAGE, MANFORD and NUGENT, JJ., concur.

PRITCHARD, J., dissents in part and concurs in part in separate opinion.

PRITCHARD, Judge, dissenting in part and concurring in part.

I dissent from that portion of the opinion holding that the evidence was sufficient to justify a finding that appellant was a dangerous offender for the purpose of enhancing his punishment above that set by the jury of 7 and 10 years, respectively, for attempted rape and burglary, to 10 and 14 years imprisonment.

The majority opinion rules that there was sufficient evidence to support the enhancement of punishment. The holding is that "In 'grabbing', 'squeezing', and 'choking' (the words of the victim herself) the victim's throat; and holding his fist before her face in a menacing manner; and in undertaking, in the manner described above, to force intercourse upon her, the defendant 'knowingly threatened to inflict serious physical injury' upon her, within the meaning of the quoted statute." [§ 558.016, RSMo (L.1977, S.B. No. 60, p. 662, § 1, eff. Jan. 1, 1979.] The majority opinion touches not upon how these described acts could cause "serious permanent disfigurement or *protracted* loss or impairment of the function of any bodily member or organ." [Italics added.] § 556.061(24), RSMo 1978. There is no evidence that the grabbing, squeezing or choking caused any impairment of the victim's bodily functions so as to amount to a *protracted* loss thereof.

Some legitimate analogies exist between "serious physical injury" and the concept of "great bodily injury" as contained in former criminal statutes, assault with intent to kill, § 559.180, RSMo 1959, and felonious assault, § 559.190, RSMo 1959. [Note that the assault statutes, § 565.050, RSMo 1978, et seq., now also use the words "serious physical injury".] In *State v. Seemiller,* 558 S.W.2d 212 (Mo.App.1977), the appellant actually beat the victim with his fists causing a bloody condition of her face and clothing and a hysterical condition, prompting the court to say at page 216[5–9], "The nature and extent of the injuries inflicted from an assault is a circumstance relevant and material to the issue of intent", and "An assault with intent to do great bodily harm may be committed by use of the fists." In the there cited case of *State v. Himmelmann,* 399 S.W.2d 58 (Mo.1966), and cases cited, there were aggravated assaults with the fists causing serious injuries and hospitalization. So also in *State v. Townsel,* 506 S.W.2d 59 (Mo.App.1974); *State v. Mathis,* 427 S.W.2d 450, 452[1] (Mo.1968); *State v. Gardner,* 522 S.W.2d 323 (Mo.App.1975); *State v. Selle,* 367 S.W.2d 522 (Mo.1963); and *State v. Spradlin,* 363 Mo. 940, 254 S.W.2d 660 (1953), where the victim was struck and choked but she suffered no serious injury, the court saying that if a police officer had not interfered, the appellant might have continued his assault and choking until she died. In all of these cases, quite apparently a battery was required to justify conviction of assault with intent to do great bodily harm—equated with causing serious physical injury. The mere raising of a fist would not suffice, nor, as here, would "grabbing", "squeezing" and "choking" suffice to constitute a threat to inflict serious physical injury of a *protracted* nature in the absence of any evidence tending to show that the victim suffered any discomfort, bruises, loss of breath, or impairment of any bodily member or organ. Put another way, a threat to strike with the fists is an empty thing unless there is evidence that if the threat is carried out, it is certain to produce serious physical injury. There is yet another aspect to appellant's acts in raising his fist and in grabbing, squeezing and choking the victim. The majority opinion chooses to ignore the definition of "knowingly" set forth in § 562.016 3: "A person 'acts knowingly', or with knowledge. (1) With respect to his conduct or to attendant circumstances when he is aware of the nature of his conduct or that those circumstances exist; or (2) With respect to a result of his conduct when he is aware that his conduct is *practically certain* to cause that result." [Italics added.] As

noted above, there is no evidence of any degree of severity of appellant's acts which would charge him with knowledge that they would result in serious physical injury of a protracted nature.

Although the majority opinion properly rejects the state's position that appellant was expected to know that intercourse with the victim would create a risk of serious infection, creating a substantial risk both to the fetus and to the mother, a matter for expert testimony, the majority opinion goes on to consider it as "showing a certain state of mind of indifference to consequences which, like the upraised fist, colors his actions in threatening the victim." This is an improper consideration not only because it goes beyond the statutory definition of "knowingly", supra, but it injects an element of reckless action which is nowhere to be found in the statutes governing dangerous offenders. Consider, then, whether one found guilty of manslaughter, reckless and wanton conduct in driving an automobile, could be found to be a dangerous offender and his sentence thus enhanced which could flow from the injection of the majority opinion of the new element of indifference to consequences. The foregoing evidence is, in my opinion, totally insufficient to support the statutory definition of serious physical injury.

I concur in the balance of the majority opinion but I would reverse the judgment and remand the case to the trial court for resentencing of appellant in accordance with the jury's verdicts without enhancement or imposition of an extended term, with a determination in appellant's presence of whether the sentences shall run concurrently or consecutively.