[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-11097
Non-Argument Calendar
_____

D.C. Docket No. 1:15-cr-00391-MHC-RGV-1


UNITED STATES OF AMERICA,

                                                              Plaintiff-Appellee,

versus

ANDRES A. LOPEZ-MARTINEZ,

                                                              Defendant-Appellant.


_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(March 29, 2018)

Before WILSON, MARTIN, and JORDAN, Circuit Judges.

PER CURIAM:

Andres Lopez-Martinez appeals his conviction and sentence for naturalization fraud.  He argues that the district court denied him the right to present a complete defense and that the prosecutor's closing argument inappropriately and incorrectly referred to excluded evidence.  Lopez-Martinez argues these errors warrant a vacation of the judgment and a new trial.  After careful consideration, we affirm.

I.

Lopez-Martinez originally immigrated to the United States in 1988.  He arrived in Oregon and took on work picking strawberries.  His job as an agricultural worker helped him get legal status as a permanent resident in 1990.

In 1997 Lopez-Martinez moved in with the Santos family.  The Santos had two daughters under twelve, A.S. and J.S.  About two years later, Lopez-Martinez was investigated by local police for allegedly molesting the Santos girls.  Lopez-Martinez denied the allegations and moved out.  He then left the country to visit his family in Guatemala.

Lopez-Martinez returned to the United States about three months later, this time arriving in Canton, Georgia.  He stayed in Georgia after he got a job making more money than he had working two jobs in Oregon.  Nearly thirteen years after the events in Oregon, Lopez-Martinez applied for naturalization.  On the application and in an interview with a government officer, he said that he had

2

never "committed an offense for which [he was] not arrested." Lopez-Martinez became a United States citizen on December 7, 2012.

In the meantime, back in 2001, a grand jury in Oregon issued an indictment charging Lopez-Martinez with a number of crimes. It wasn't until 2013, however, that police were able to find Lopez-Martinez in Georgia and arrest him. Lopez-Martinez was brought back to Oregon for prosecution and faced a prison sentence of up to 500 months if convicted. He pled guilty to two counts of unlawful sexual penetration in the first degree and received a 100-month sentence.

While Lopez-Martinez was serving his state sentence, the federal government indicted him for naturalization fraud, in violation of 18 U.S.C. § 1425(a). The government charged that, based on the Oregon charges and conviction, Lopez-Martinez knowingly lied when he said he had never committed a crime for which he was not arrested. Before trial, Lopez-Martinez filed a motion in limine, asking the district court to exclude evidence of his Oregon guilty plea. He argued that plea was unconstitutional because it was the product of coercion; it was not entered into knowingly and voluntarily; and his court-appointed counsel was constitutionally ineffective during the state proceedings. The district court reviewed the state record, found the claims had no merit, and denied Lopez-Martinez's motion. The government then filed its own motion in limine asking the court to exclude evidence and prohibit arguments that collaterally attacked the

3

validity of Lopez-Martinez's guilty plea.  The court granted the motion.  The upshot was that, at trial, Lopez-Martinez could present evidence and argue he was in fact innocent of his Oregon convictions but could not challenge his guilty plea as involuntary or claim he had ineffective assistance of counsel during the Oregon proceedings.

At trial, the jury heard testimony from J.S., who said that Lopez-Martinez sexually molested her "on more than one occasion."  The government also presented Lopez-Martinez's plea agreement to the jury.  On the stand, Lopez-Martinez denied he inappropriately touched either of the Santos girls.  He testified he "pled guilty [in Oregon] not because [he] had done that, but because [he] didn't have any other option.  Because 500 months were kind of 40 years."  He also said, "I just pled guilty because I was trapped, you know, in this pressure, in this situation where if I was — where I was going to get 500 months instead of the 100 months."  He testified about the state court's statements about his possible sentences and that there would be no immigration consequences after pleading guilty, and his own lack of understanding about his options and the plea offer due to not having any advice or recommendation from his lawyer at the time.  He also talked about asking his court-appointed attorney why he needed to sign the plea agreement and signing it after being told "because you have to."

4

The jury found Lopez-Martinez guilty of naturalization fraud.  This appeal followed.

## II.

Lopez-Martinez argues that the district court erred when it "prevented him from explaining that his answer on the [naturalization] application was truthful." He claims the court's order prevented him

> from introducing evidence—both testimony and documents—that he was not guilty of the state crime and answered truthfully the naturalization application and said he was forced to enter a plea of guilty[;] that he received incorrect immigration advice about the effect his guilty plea would have on his citizenship[;] and prevented him from introducing letters [he] wrote, complaining about the Oregon judge and his court-appointed counsel.

Lopez-Martinez argues this denied him the constitutional guarantee of "a meaningful opportunity to present a complete defense."  Crane v. Kentucky, 476 U.S. 683, 690, 106 S. Ct. 2142, 2146 (1986) (quotation omitted).

We review de novo constitutional questions of law.  United States v. Underwood, 446 F.3d 1340, 1345 (11th Cir. 2006).  A district court's rulings on the admissibility of evidence are reviewed for abuse of discretion.  Id.

The Sixth Amendment guarantees criminal defendants the right to have "compulsory process for obtaining witnesses in his favor."  U.S. Const. amend. VI. This right, and due process generally, requires that a defendant "have an

opportunity to be heard" and "to offer evidence of his own."  Specht v. Patterson, 386 U.S. 605, 610, 87 S. Ct. 1209, 1212 (1967); United States v. Hurn, 368 F.3d 1359, 1362 (11th Cir. 2004).  Generally, a defendant must be allowed to present evidence "directly pertaining to any of the actual elements of the charged offense or an affirmative defense"; "pertaining to collateral matters that, through a reasonable chain of inferences, could make the existence of one or more of the elements of the charged offense or an affirmative defense more or less certain"; "that could have a substantial impact on the credibility of an important government witness"; or "tends to place the story presented by the prosecution in a significantly different light, such that a reasonable jury might receive it differently."  Hurn, 368 F.3d at 1363 (footnotes omitted).

However, even if a district court erroneously excluded evidence, we will not reverse if the "error was harmless beyond a reasonable doubt."  Id. at 1362–63 (quotation omitted).  When a defendant gets the "essence of the desired [evidence] before the jury," his compulsory due process rights have not been prejudiced. United States v. Buckley, 586 F.2d 498, 503 (5th Cir. 1978).[1]

In this case, we need not decide whether the district court's exclusion of Lopez-Martinez's evidence challenging the validity of his guilty plea violated his

---

[1] In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981. Id. at 1209.

6

right to present a complete defense because any error was harmless beyond a reasonable doubt. Lopez-Martinez sought to tell the jury that he pled guilty not because he committed the crimes, but for other, unrelated reasons. He did exactly that, repeatedly telling the jury he did not plead guilty because he committed the crimes but because he felt "pressure" and "trapped." He also told the jury that he did not understand his options or his possible sentences; that the state court told him there wouldn't be any immigration consequences of his guilty plea; and that he signed the plea agreement only after his lawyer told him he had to. Lopez-Martinez thus got the "essence of the desired [evidence] before the jury." See id. (determining a defendant's compulsory due process rights were not prejudiced by his inability to question certain witnesses because other witnesses testified on those facts). On this record, any possible constitutional error in the district court's ruling was harmless beyond a reasonable doubt. See Hurn, 368 F.3d at 1362–63.

### III.

Lopez-Martinez also argues his due process rights were violated by the government's misconduct during closing arguments. He argues the prosecutor misled the jury when she argued that he pled guilty of his "own free will."

"To find prosecutorial misconduct, a two-element test must be met: (1) the remarks must be improper, and (2) the remarks must prejudicially affect the substantial rights of the defendant." United States v. Wilson, 149 F.3d 1298, 1301

(11th Cir. 1998) (quotation omitted).  If "the prosecutor's remarks were 'invited,' and did no more than respond substantially in order to 'right the scale,' such comments would not warrant reversing a conviction."  United States v. Young, 470 U.S. 1, 12–13, 105 S. Ct. 1038, 1045 (1985).

Assuming the prosecutor's remark was improper because it impermissibly took advantage of the district court's order excluding defense evidence and arguments challenging the guilty plea, the prosecutor's remarks were invited. During closing arguments, defense counsel effectively argued to the jury that Lopez-Martinez did not freely plead guilty, which was also in violation of the district court's order:

> [W]hat [Lopez-Martinez] knows is if I don't want to die in an Oregon prison, here is what I have to say.  I have to say yes to these questions. I have to say I'm satisfied with my lawyer.  I have to say I did it. Even though he didn't.

Only after defense counsel finished did the prosecutor make the challenged statement:

> So, look at the evidence.  Who's telling the truth?  [J.S.]; or Mr. Lopez?  And if Mr. Lopez, which Mr. Lopez?  The 2014 Mr. Lopez who stood in court and said I committed these crimes and I'm changing my plea, of my own free will?  Or the Mr. Lopez today who doesn't want to lose his citizenship.

Taken in context, the government's lone remark "did no more than respond substantially in order to 'right the scale,'" and thus does not warrant reversal.  See id.

8

**AFFIRMED.**