Samuel A. Spiegel, J.
In this article 78 proceeding the petitioner, who has been charged with violating the conditions of his parole, seeks a judgment (1) granting him an immediate preliminary inquiry at which he shall have the assistance of counsel, .receive a copy of the charges against him and have an opportunity to contest the charges against him to determine whether there is reasonable cause to believe he has violated the conditions of his parole, and (2) rescinding the determination of May 12, 1972, declaring the petitioner, a delinquent parolee, without such an inquiry.
The petitioner was sentenced by the Supreme Court, Kings County, on February 18,1971, to a three-year term upon his conviction for the crime of grand larceny in the second degree, a class “ D Felony ”. The petitioner thereafter requested a conditional release pursuant to paragraph (b) of subdivision 1 of section 70.40 of the Penal Law, and this request was granted on January 30,1972. To secure this conditional release the petitioner agreed to abide by certain “ conditions of parole ”. The respondent, claiming that the petitioner violated these conditions of parole, incarcerated the petitioner for parole violation on April 13, 1972, upon a parole warrant issued pursuant to section 217 of the Correction Law. The petitioner was declared delinquent by one of the members of the Board of Parole on May 5,1972.
The petitioner argues that the respondent’s failure to serve him with notice of the alleged parole violations, and grant him an opportunity to contest those charges at a preliminary inquiry, immediately following his incarceration, violated the terms of his parole, and violated his right to due process of law as guaranteed by the Fourteenth Amendment of the United States Constitution, and section 6 of article I of the Constitution of the State of New York.
The procedure for retaking purported parole violators is set forth in sections 216-218 of the Correction Law, and 7 NYCÍtít 1.17, which provides in part: “ (a) A warrant for the retaking and temporary detention of a parole violator may be issued by a member of the Board of Parole or by any officer of the Division of Parole designated by the board * * * (b) Whenever a warrant for the arrest or retaking and temporary detention is issued, a violation of parole report shall be prepared and presented to a member of the Board of Parole. *38 After considering the charges of delinquency, the board member may order the parolee’s return to the institution from which he was released, or other institution designated by the Commissioner of Correction. The member of the board shall thereupon sign a warrant of return which shall subsequently be substituted for the warrant for the retaking and temporary detention, and the parolee’s name shall be placed on the official list of delinquents. “(c) In all cases where a parolee is to be restored to supervision or delinquency is to be cancelled, such action shall be taken only upon unanimous consent of three members of the board considering the case.”
7 NYCRR 1.17 provides that following the return of a parole violator to prison, he will be given an opportunity to appear before the Board of Parole, where the charges against the parolee shall be enumerated, and the parolee shall be heard concerning his alleged violation. Until recently parolees had been denied counsel at hearings before the parole board, however in People ex rel. Menechino v. Warden (27 N Y 2d 376, 383), decided by the Court of Appeals in January, 1971, it was held at parole revocation hearings “ the demands of due process, under both the United States Constitution and the Constitution of New York State, require that a parolee be represented by a lawyer, and entitled to introduce testimony, if he so elects.” (See, also, People ex rel. Silbert v. Cohen, 29 N Y 2d 12; People ex rel. Maggio v. Casscles, 28 N Y 2d 415.)
The petitioner contends that under the Menechino holding, immediately after having been retaken for his purported parole violation he was entitled to representation by counsel and a preliminary hearing on whether there exists reasonable cause for believing he violated the conditions of his parole. This was not the holding of Menechino, which dealt exclusively with the parolee’s right to counsel at parole revocation hearings specifically addressed to the question whether the parolee violated the conditions of his parole.
Regarding the role of counsel in connection with parole revocation hearings, the court in Menechino noted (supra, pp. 383-384): “ The presence of an attorney, the receipt of testimony offered by the parolee, are required in order to enable the board to ascertain the facts, pro and con, upon which it is to make its determination. In other words, participation by counsel need be no greater than is required to assure, to the board as well as to the parolee, that the board is accurately informed of the facts before it acts, and the permitted presentation of tes *39 timony by the parolee need be no greater than is necessary for that same purpose.
11 Meeting these requirements will not, we hasten to interpolate, occasion the slightest relaxation of supervisory control over parolees. ’ ’
Clearly, Menechino (27 N Y 2d 376, supra) did not require a modification of existing parole revocation procedure other than as specifically noted above, and the discretion of the Board of Parole and designated officers of the Division of Parole to retake and temporarily detain parolees pending a full hearing before the Board of Parole was not limited by that decision.
However, this latter issue was recently explored in detail by the United States Supreme Court in Morrissey v. Brewer (408 U. S. 471, decided June 29, 1972). Because of the relevance of the Morrissey decision to the issues herein, I .take the liberty of quoting extensively therefrom. In Morrissey (supra) two petitioners initiated habeas corpus proceedings claiming that their paroles were revoked without a hearing, and that they were thereby denied due process of law. The Supreme Court while noting: “ the revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations. Cf. Mempa v. Rhay, 389 U. S. 128 (1967),” (supra, p. 480) concluded “ the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a ‘ grievous loss ’ on the parolee and often on others. It is hardly useful any longer to try to deal with this problem in terms of whether the parolee’s liberty is a 1 right ’ or a ‘ privilege ’. By whatever name the liberty is valuable and must be seen as within the protection of the Fourteenth Amendment. Its termination calls for some orderly process, however informal.” (supra, p. 482). With regard .to “ the nature of the process that is due,” (supra, p. 484) the Supreme Court concludes that there are two important stages in the typical process of parole revocation: the first stage occurring when the parolee is arrested and detained, and the second occurring when parole is formally revoked. Noting that there is generally a substantial time lag between these two stages and that a parolee may be incarcerated at an institution far from the place of his arrest before the final decision is made concerning revocation, the high court observes: ‘ ‘ Given these factors, due process would seem to require that some minimal inquiry be conducted at or reasonably near the place of the alleged parole violation or arrest and as promptly as convenient after arrest while information is fresh *40 and sources are available. Cf. Hyser v. Reed, 115 U. S. App. D. C. 254, 318 F. 2d 225 (1963). Such an inquiry should be seen as in the nature of a ‘ preliminary hearing ’ to determine whether there is probable cause or reasonable grounds to believe that the arrested parolee has committed acts that would constitute a violation of parole conditions. Cf. Goldberg v. Kelly, 397 U. S. at 267-271.
1 ‘ In our view due process requires that after the arrest, the determination that reasonable grounds exist for revocation of parole should be made by someone not directly involved in the _ _ _ „ ¿fe áfe case.
1 ‘ With respect to the preliminary hearing before this officer, the parolee should be given notice that the hearing will take place and that its purpose is to determine whether there is probable cause to believe he has committed a parole violation. The notice should state what parole violations have been alleged. At the hearing the parolee may appear and speak in his own behalf; he may bring letters, documents, or individuals who can give relevant information to the hearing officer. On request of the parolee, persons who have given adverse information on which parole revocation is to be based are to be made available for questioning in his presence. However, if the hearing officer determines that the informant would be subjected to risk of harm if his identity were disclosed, he need not be subjected to confrontation and cross-examination.” (Morrissey v. Brewer, supra, pp. 486-487.)
In stating the foregoing the Supreme Court clearly did not intend to establish a rigid parole revocation procedure and the court specifically noted: “No interest would be served by formalism in this process; informality will not lessen the utility of this inquiry in reducing the risk of error.” {supra, p. 487.) “We have no thought to create an inflexible structure for parole revocation procedures ” {supra, p. 490).
In People ex rel. Menechino v. Warden (27 N Y 2d 376, 382), the court said: ‘ ‘ Certainly, a 1 parole court ’ or a parole board panel may not be permitted —simply because it is an administrative body rather than a judicial tribunal — to base its determination, having so serious an impact on the lives of the individuals who appear before it, on a possibly mistaken view of the facts owing to the parolee’s inability to make a proper factual presentation.”
It is for reasons such as these that the Supreme Court, rejecting all efforts to limit the right to counsel to the narrow confines of “ criminal prosecutions ” under the Sixth Amendment, *41 has treated such right as an essential element of due process applicable to all proceedings, whether they be classified as civil, criminal or administrative, where individual liberty is at stake. (See Mempa v. Rhay, 389 U. S. 128, supra; Matter of Gault, 387 U. S. 1; see, also, Specht v. Patterson, 386 U. S. 605; Hewett v. North Carolina, 415 F. 2d 1316, 1323; United States ex rel, Schuster v. Herold, 410 F. 2d 1071; Shone v. State of Maine, 406 F. 2d 844.) No matter how the proceeding be characterized, the demands of due process, under both the United States Constitution and the Constitution of New York State, require that a parolee be represented by a lawyer, and entitled to introduce testimony, if he so elects. The constitutional guarantee demands no less if the search for truth is not to be sacrificed to administrative speed and convenience. (Cf. Goldberg v. Kelly, 397 U. S. 254, 266, supra; Escalera v. New York City Housing Auth., 425 F. 2d 853, 867, cert. den. 400 U. S. 853; see, also, Matter of James, 22 N Y 2d 545 to the same effect.) We find completely unpersuasive the contention that, since parole is a mere ‘ ‘ privilege, ’ ’ a matter of grace, and not a ‘ ‘ right, ’ ’ various constitutional guarantees, including the right to counsel may properly be denied at a revocation hearing.
Since the petitioner herein was neither initially apprised of the parole violations charged against him nor afforded a “ preliminary hearing ” to contest those charges it is apparent that the respondent has failed to meet the requirements of due process enunciated in Morrissey (supra). The question remains whether parolees are entitled to the assistance of counsel at the “preliminary hearings.” In Morrissey (supra), the court stated: “We do not reach or decide the question whether the parolee is entitled to the assistance of retained counsel or to appointed counsel if he is indigent. ’ ’ A.s noted above, however, in Menechino (27 N Y 2d 376, supra), the New York State Court of Appeals held that parolees were entitled to the assistance of counsel at parole revocation hearings, and similarly parolees should be afforded the assistance of counsel at “ preliminary hearings ” conducted at the initiation of parole revocation proceedings. This court can conceive of no legitimate basis for granting parolees the assistance of counsel at parole revocation hearings and denying them such assistance at “preliminary hearings.” In fact counsel may play an even more vital role at11 preliminary hearings ’ ’ than at full revocation hearings, for at the initial stages of the parole revocation proceedings it is essential that charges of parole violation by crystallized and that the parolee be given an immediate opportunity to rebut those *42 charges while the circumstances surrounding those charges are fresh.
The preliminary hearing should be before some independent decision maker, not necessarily outside the Parole Department, and not by someone directly involved in this case, and should be to determine whether there is probable cause or reasonable grounds to believe that the arrested parolee has committed acts which would constitute a violation of parole conditions. This preliminary hearing should be conducted at or near the place of the alleged parole violation or arrest as promptly after arrest as practicable while information is fresh and sources available.
The Morrissey case contains no suggestion that its decision is not retroactive for all parole violators awaiting a full hearing. They should be afforded a preliminary hearing with the right to counsel. As to retroactivity, this decision shall not be retroactive as to those who have had a full hearing. The Morrissey case completes the cycle of due process to alleged parole violators by a preliminary hearing on probable cause or reasonable grounds, after the Menechino case granted a full hearing as to the alleged parole violation heretofore unknown in our system of criminal justice.
Accordingly, the petitioner’s application is granted to the extent of (1) granting him an immediate preliminary hearing, at a facility within reasonable proximity from the place of his arrest on April 13, 1972, at which he shall have the assistance of counsel and receive notice of the parole violations charged against him and (2) rescinding the respondent’s determination of May 12,1972, declaring the petitioner a delinquent parolee.
Settle judgment.