Richard J. Shay, J.
Were the above-captioned matters before an appellate court on appeal they would, no doubt, be dismissed. (See People ex rel. Burley v. Agnew, 28 N Y 2d 551, granting lv. to app., and People ex rel. Burley v. Agnew, 28 N Y 2d 658, dsmg. app. on the grounds the relator had been released on parole.) In this court they have simply died a natural death. This opinion is “ ex post facto ”, but is written in the vain hope that change might be effected and as a declaration that, at least-insofar as this court is concerned, the practice of indiscriminate and prolonged deprivations of liberty by the use of a “ Warrant for Retaking and Detaining a Paroled or Conditionally Released *903 Prisoner ” (hereinafter referred to as a parole detainer) will not be countenanced.
The relators in the above-captioned habeas corpus proceedings are now at liberty. Parole detainers filed previously (April 26, 1972 in the case of Harris and July 17, 1972 in the case of Thompson) were “ lifted ” in some undetermined fashion some 24 hours prior to the scheduled return date of the writ allowed October 13, 1972 by this court. The involved men had each been arrested on new criminal charges on or about the date of their respective detainers; bail on the new charge had either been set or the question deferred until the disposition of the parole violation charge; each individual was in a position to “ make bail and both men were denied any sort of preliminary hearing on the question of their alleged parole violations (Morrissey v. Brewer, 408 U. S. 471).
I am advised that even after they had gone through the formality of obtaining a bail bond on the recent charges, they were told no hearing would be held. Effectively, they were held, by virtue of the detainers, without due process of law. (Morrissey v. Brewer, supra.) The actual length of this violative incarceration is not important (except, obviously to the men involved); what is important is the total disregard shown by the parole authorities, on the one hand for the basic constitutional tenets enunciated clearly by the Supreme Court in Morrissey and, on the other hand, for the direction by this court to, in effect, show cause why these men were detained.
The simple expedient of “ lifting ” the detainer rather than answering the writ would seem to be an indication of the strength of the position of the parole authorities and an indictment, which rings loud and clear in the minds of the total parole population, of the type of “ justice ” meted out to these “ freemen
Parenthetically, a similar writ involving another parolee which this court issued in September of 1971 was met by the office of the Attorney-General with requests for adjournments (granted), assurances that a return would be promptly filed (none was ■filed) and, finally, simply the “ lifting ” of the detainer. This incident actually involved a conditional releasee and obviously followed, in point of time, a decision rendered in this court on December 7, 1970 (People ex rel. Frisbie v. McEvoy, 64 Misc 2d 840, notice of appeal filed and later withdrawn or dismissal agreed to by the Attorney-General) and the Menechino decision of January 13,1971 (People ex rel. Menechino v. Warden, Green Haven State Prison, 27 N Y 2d 376).
*904 What all of this boils down to is that potential and extended administrative incarceration, possibly on whim, hangs over the head of every parolee in this State and apparently every effort is being made to avoid the “ danger ’ ’ of testing this policy in the courts. (See Matter of Way v. Division of Parole of State of N. Y., 71 Misc 2d 229 and People ex rel. Van Burkett v. Montanye, 70 Misc 2d 907.)
The bitterness engendered by the practice of “ lifting ” detainers when faced with the burden of explaining to the judiciary why constitutional .procedures are not followed cannot be explained away by such excuses as lack of personnel or lack of time to establish and implement court-mandated procedures for the protection of liberty.
A parolee detained by virtue of a detainer or warrant issued by a member of the Board of Parole or by a designated officer (Correction Law, §§ 216-218; 7 NYCRR 1.17) shall be entitled to a prompt preliminary hearing (Morrissey v. Brewer, supra; Matter of Richardson v. New York State Bd. of Parole, 71 Misc 2d 36) with all of the safeguards of due process as enumerated in the cases cited in this opinion.
A prompt hearing shall be interpreted, in this court, to mean within one week of the filing or execution of the detainer, whether or not another charge is pending against the parolee, unless unusual circumstances, properly verified, are present.
The Sheriff of Cortland County will be directed to advise this court of the names of any prisoners held now, or in the future, by virtue of such parole detainers and the date of the filing or 'execution thereof.