UNITED STATES of America

v.

Benorarias T. WEBSTER, Appellant.

No. 73-1183.

United States Court of Appeals,
District of Columbia Circuit.

Argued Jan. 14, 1974.

Decided Feb. 1, 1974.

As Amended April 18, 1974.

Maureen P. English,* Law Student, with whom John R. Kramer, Washington, D. C. (appointed by this court), and Ann Steinberg,* Law Student, were on the brief, for appellant.

Michael G. Scheininger, Asst. U. S. Atty., with whom Harold H. Titus, Jr., U. S. Atty. at the time the brief was filed, John A. Terry, and Vincent R. Alto, defense counsel at the time the brief was filed, were on the brief, for appellee. Earl J. Silbert, U. S. Atty., also entered an appearance for appellee.

Before WRIGHT and TAMM, Circuit Judges, and WYZANSKI,** Senior District Judge.

WYZANSKI, Senior District Judge:

This is an appeal from the November 23, 1971 order of the District Court revoking appellant's probation.

It appears that on June 11, 1969 the grand jury indicted appellant on two counts, each charging an assault with a dangerous weapon on a different policeman, in violation of 22 D.C.C. § 505(b). After he was arraigned August 8, 1969, the Assistant United States Attorney on

---

* Entered an appearance as student counsel pursuant to Rule 20 of the General Rules of this court.

** Of the United States District Court for the District of Massachusetts, sitting by designation pursuant to 28 U.S.C. § 294(d) (1970).

February 16, 1970 moved that appellant should undergo a mental examination at St. Elizabeth's Hospital. Appellant's counsel opposed the motion, and favored a mental examination by court-appointed experts. March 23, 1970 the court ordered appellant to be examined by a psychiatrist of the Legal Psychiatric Service. The doctor found Webster "competent."

Appellant was set to trial November 30, 1970; and on the same day was convicted by a jury. On April 19, 1971, more than four months later, the delay not being explained in the record, the trial judge imposed on defendant-appellant with respect to each of the two counts a concurrent sentence of one to five years, but adjudged that the execution of said sentence be suspended and placed defendant on probation for three years.

Then on May 31, 1971 the Metropolitan Police Department arrested him on a charge of unlawful entry with threats— a charge later reduced to assault with a dangerous weapon. Before that new case went to trial, the District Judge brought defendant before him on June 16, 1971 for "a hearing on a violation of probation." The judge then said that "we have a signed statement from [the appellant] Mr. Webster to the effect that he acknowledged that he had been informed by Mr. Hunter [the probation officer] that he violated the conditions of probation granted by the Court on the 31st day of May, in that *he was arrested by the Metropolitan Police Department, charged with unlawful entry and threats, that was subsequently left to his being charged with assault with a dangerous weapon.*" [Emphasis added.]

Defendant's counsel at the June 16, 1971 hearing suggested that the revocation proceeding stand in abeyance until the criminal trial of Webster on the charge of a crime allegedly committed on May 31, 1971. But instead, the judge began proceedings. Webster (not being under oath) told the court the incident was only a family quarrel, he being unarmed and having pursued his wife to

the home of people named Bannister. But then Bannister testified that Webster came to his house with a gun and said, "I don't want no trouble out of you, all I want is my wife," that Webster put the gun to Mrs. Webster's head, and that she started to leave with him, but suddenly she slammed the door and from the kitchen called the police.

Without making any finding, the judge then announced that he would send Webster to St. Elizabeth's for an examination.

Five months later on November 19, 1971 (not 1972, as the transcript erroneously states) the judge resumed the hearing. At the outset defense counsel pointed out "that the charges brought against Mr. Webster for which the motion for revocation of probation was made have since been dropped by the United States Attorney." He then added that the reason may have been that meanwhile the witness Bannister had been indicted for murder, and his credibility had been put in question.

It next appeared that while the trial judge was on vacation in July, the Chief Judge had ordered Webster to report to St. Elizabeth's for examination. However, the hospital was then unable to take him. Four months later, on October 26, 1971, the hospital informed the probation officer it would be ready to see Webster for examination the very next morning at 8:30. Late on the afternoon of October 26, 1971 the probation officer directed Webster to report on October 27, 1971 at 8:30 a. m. at the hospital. He did not report at that hour. Apparently 8 hours before the appointment, at 12:25 (it seems) a. m., Webster had been arrested and taken into custody for another assault with a dangerous weapon. Learning of this on the morning of October 27, 1971 the probation officer told the United States Attorney that Webster was supposed to have reported to St. Elizabeth's at 8:30 a. m., when obviously, being in custody, he could not have gone to the hospital. At once the judge who had this new case

ordered Webster taken to St. Elizabeth's. That hospital on November 12, 1971 filed a letter stating that Webster was "competent to fully understand the quality and nature of the probation revocation proceedings."

The probation officer at the second November 15, 1971 hearing on the revocation of probation informed the trial judge conducting that hearing that Bannister, whom he chanced to meet on the street, had told him that because he made a mistake as to the courtroom, he did not show up at the hearing of the earlier charge for which Webster had been arrested on May 31, 1971 and therefore the case against Webster had been dismissed. But it is not clear whether Bannister or the probation officer knew that the reason the charge of the May 31, 1971 crime had been dismissed was the prosecutor's lack of confidence in Bannister's credibility.

In this confusion, the trial judge, without making any finding as to whether Webster had in fact committed the offense for which he had been arrested on May 31, 1971, declared he was "going to revoke Mr. Webster's probation. It seems to me that he's been living very close to the line. He's a threat to the community. The dismissal of the other [May 31, 1971] case, apparently because of an absence of witnesses, proves nothing to us; in addition to the fact that he's got the subsequent involvement when he violated his probation by not even showing up on time for St. Elizabeth's." Accordingly, on November 23, 1971 the trial judge revoked the probation which had been imposed on April 19, 1971.

January 4, 1972 Webster moved for reconsideration of the order revoking his probation. January 11, 1972 the trial judge denied that motion. March 7, 1972 Webster appealed to this court from that denial. That is the appeal which is before us.

The government's first point is that Webster's appeal is not timely, and so it should be dismissed.

At first blush, the point seems well taken, for, as has been stated above, the District Court filed November 23, 1971 its order revoking Webster's probation, January 4, 1972 Webster moved to reconsider, January 11, the court denied the motion, and not until fifty-six days later, March 7, 1972, did Webster file a notice of appeal. This was not "within 10 days after the entry of the judgment or order appealed from," as required by Rule 4(b), Fed.Rules, App.P., nor within the 30-day extension period allowable upon a showing of excusable neglect. Thus it is claimed that this court lacks jurisdiction of the appeal, as such. United States v. Robinson, 361 U.S. 220, 80 S.Ct. 282, 4 L.Ed.2d 259 (1960).

However, we are mindful that Webster was uninformed by the revoking judge of his right to appeal and was represented by a counsel who, though he purported to give him "the assistance of counsel" to which Webster had a right under the Sixth Amendment to the Constitution, Mempa v. Rhay, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967), did not point out to the trial judge, first, that there was no written notice *from the court* that there would be a hearing on revocation of Webster's probation; second, that the notice given by the probation officer, and acknowledged in writing by Webster, charged him with having violated the conditions of probation merely by having been "arrested . . . charged with unlawful entry and threats" (later reduced to a charge of an assault with a dangerous weapon) —and that is only a charge of a charge, not a charge of a crime; third, that the foregoing assault charge not only was dismissed, but was dismissed because of lack of credibility of the only witness who testified before the revoking judge; fourth, that the revoking judge failed to make an explicit finding that he believed the testimony of the witness whose credibility was suspect; fifth, that the trial judge seems to have misunderstood that the reason Webster did not appear at St. Elizabeth's on October 28, 1971 was not because he was unreliable but because he

got the notice late on the preceding afternoon and was arrested and held in custody within a few hours thereafter; and sixth, that the trial judge based his revocation on grounds which had never been articulated in any notice given to the defendant in advance of, or even during, the taking of testimony at the hearing. *Compare* Gagnon v. Scarpelli, 411 U.S. 778, 93 S.Ct. 1756, 36 L. Ed.2d 656 (1973).

This wholly unsatisfactory representation by counsel would have been a more than colorable basis for a collateral attack, by a 28 U.S.C. § 2255 or a habeas corpus proceeding. But Webster, who seems not to have had any lawyer in the District Court once the probation had been revoked, ignorantly did not explicitly advert to such remedies. Instead he filed papers which he erroneously regarded as timely notices of appeal or appeals.

■■ We conclude that it is in the interests of justice to treat the papers before us as though Webster had asked the District Court and this court for relief pursuant to 28 U.S.C. § 2255.[1] Not to take this position would merely delay matters and require, for no useful purpose, a new and redundant proceeding.

Regarding our jurisdiction as having been invoked properly and in due time, we do not, however, view this as a case in which it is transparent that the trial judge has reached a wrong result; we merely are of opinion that he failed in several respects to follow the appropriate procedure.

The court itself should have given a written notice or show cause order to Webster of the precise ground on which the court would hear evidence as to whether his probation should be revoked.

■ That ground could properly have been stated to be "whether Webster had engaged in an assault on May 31, 1972," but it could not properly have been stated to be whether Webster had been "charged" with an assault. It is not a ground for revoction that a probationer has merely been *charged* with a crime; on the other hand, it is not necessary that the ground be that the probationer has been *convicted* of a crime. Correctly stated, the issue is whether he *committed* a crime; and on that issue the judge considering revocation is free to reach his own finding if the matter is one where the crime said to have been committed was not prosecuted or was dismissed on some basis not going to the merits.

Moreover, the trial judge was faced with inconsistent statements which he did not sharply analyze; and he seems to have misunderstood Webster's want of fault in not appearing at St. Elizabeth's on October 28, 1971.

While these matters, *taken together*, demand that we should vacate the November 23, 1971 revocation of probation, we are not to be understood as saying that there should not be a new hearing on revocation, nor are we expressing any view as to whether, quite apart from proof that he committed any crime subsequent to April 19, 1971, Webster has demonstrated such a want of regard for

1. The government contends that we are precluded from treating appellant's papers as a § 2255 motion by the decision of this court in Freeman v. United States, 103 U.S.App. D.C. 15, 254 F.2d 352 (1958). The *Freeman* court refused to consider a § 2255 motion which attacked a probation revocation as untimely. The court stated that this section was available only to question the imposition as distinct from the execution of sentence. However, since *Freeman* was decided, the Supreme Court, in Gagnon v. Scarpelli, 411 U.S. 778, 93 S.Ct. 1756 (1973), held that probationers have a constitutional right to revocation hearings conducted according to certain specified procedures. *See also* Mempa v. Rhay, 389 U.S. 128, 88 S.Ct. 254 (1967). In light of *Gagnon*, the force of *Freeman* must be limited. The first paragraph of § 2255 states that a prisoner in custody may claim the right to be released because of certain specified infirmities in his sentence or because his sentence "is otherwise subject to collateral attack." The *Freeman* court did not focus on the quoted language. We think this language is broad enough to encompass a constitutional claim of deprivation of fair procedures at a revocation hearing.

persons in his family or in the community that a trial court is warranted in revoking his probation. There are obvious advantages in having questions of this nature looked at afresh by the trial court, not by us. And we take it for granted that in any further proceedings the exploration of Webster's mental state (which has obviously already been of concern to the judge as well as to the prosecution, the defense counsel, and the probation officer) will not stop with a mere determination whether Webster is competent to participate in a judicial hearing on revocation. In his case there are difficult questions as to whether he should be confined, and, if so, in what type of institution. Perhaps those who know the circumstances of the family may throw light on the matter, even if Webster's wife chooses to invoke, as she previously did, her spouse's privilege not to testify.

In view of the likelihood of a further proceeding in the District Court, our order will be merely that the appellant is to be discharged one month after our judgment is entered unless before then he is arrested on process from the District Court requiring him to show cause why his probation should not be revoked, and, pending determination of that matter, denying him his release except on reasonable bail.

So ordered.