UNITED STATES of America ex rel.
William Aaron SPERO,
Petitioner,

v.

Henry G. WENZEL III, District Attorney
of the County of Suffolk,
Respondent.

No. 75 C 324.

United States District Court,
E. D. New York.

July 3, 1975.

William A. Spero, pro se.

Henry G. Wenzel, III, Dist. Atty., of Suffolk County, N. Y., Ronald E. Lipetz, Riverhead, N. Y., of counsel, for defendant.

## MEMORANDUM AND ORDER

BRAMWELL, District Judge.

William A. Spero, petitioner in this habeas corpus action, pleaded guilty in state court to Forgery in the second degree and attempted grand larceny in the third degree. As a result, he was placed

on probation for a period of five years, beginning in December 1972. Thereafter, on April 2, 1974 petitioner was charged with violating the terms and conditions of his probation. A hearing on these charges was held on April 29–30, 1974, where it was determined that Spero had violated the terms of his probation. As a result, the court revoked petitioner's probation and sentenced him to a term of one year for each previous conviction to be served consecutively. Spero then appealed to the Appellate Division, Second Department, contending that the evidentiary standards employed at the probation revocation hearing resulted in a deprivation of his constitutional rights. On November 25, 1974 that court affirmed without opinion the determination which resulted from the revocation hearing. *People v. Spero*, 46 A.D.2d 805 (2d Dept. 1974). On February 20, 1975 the New York Court of Appeals denied Spero leave to appeal. Having exhausted his state remedies, Spero has now petitioned this court on a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, alleging that he is being unlawfully detained at the Suffolk County Jail in violation of the Fourteenth Amendment guarantee of due process of law and the Sixth Amendment right of a criminal defendant to be confronted with the witnesses against him.

■ The probation revocation hearing complained of by petitioner was held pursuant to and in basic accordance with the New York statutory scheme.[1] An examination of the record of Spero's hearing discloses that he was represented by counsel, exercised the right to cross-examine the one witness relied on by the prosecution, testified in his own behalf, and that no legally privileged evidence was used against him. Upon a preponderance of the evidence, the Judge found Spero to be in violation of the terms of his probation. However, petitioner asks that we do not end our inquiry here. It is his contention that the use of hearsay evidence at a probation revocation hearing is constitutionally impermissible in that the determination reached could result in the defendant's incarceration. After reviewing the entire record of the probation hearing this Court has found a sufficient amount of relevant, competent, non-hearsay evidence to warrant a finding that petitioner violated a condition of probation.

Accordingly, petitioner's motion is denied. Nonetheless, this Court's concern with the dangers inherent in the use of unlimited hearsay at such a vital stage of the criminal proceeding compels a further consideration of this practice.

The charge against the petitioner alleged that he:

1. Left the jurisdiction without the permission of his probation officer;

2. Failed to report to his probation officer as ordered;

3. Engaged in injurious and vicious habits, including:

a. Failure to return, by the date specified in the contract, an automobile rented in Delaware;

---

N.Y. Criminal Procedure Law § 410.70 (McKinney 1971) provides in pertinent part:

3. *Manner of conducting hearing.* The hearing must be a summary one by the court without a jury and the court may receive any relevant evidence not legally privileged. The defendant may cross-examine witnesses and may present evidence on his own behalf. A finding that the defendant has violated a condition of his sentence must be based upon a preponderance of the evidence.

4. *Counsel.* The defendant is entitled to counsel at all stages of any proceeding under this section . . .

The court may not revoke a sentence of probation unless it has found that the defendant has violated a condition of probation. § 410.70(1)(a) However, commission of an additional offense, other than a traffic infraction, constitutes a ground for revocation of such sentence regardless of whether it is specified as a condition of probation. § 410.10(2) If a defendant is found to be in violation of probation, the judge may then modify the sentence of probation or impose sentence for the original convictions. § 410.70(5)

b. Failure to return a hauling truck rented in Delaware by the date specified in the rental contract;

c. Issuance of a bad check in the amount of $74.99 in violation of N.Y. Penal Law § 190.05 (McKinney's Consol. Laws, c. 40, 1967);

d. Issuance of a bad check in the amount of $48.57 in violation of 11 Del. C. § 900(2) (1953);

e. Failure to appear to answer a traffic ticket for an uninspected automobile; and

f. Withholding payments of rent due while receiving financial assistance from the Department of Social Services;

4. Failed to truthfully answer a reasonable inquiry by his probation officer regarding the rented automobile.

The only witness for the People's case was petitioner's probation officer. From his personal knowledge he testified that Spero left the jurisdiction without permission. (R at 9) Upon cross-examination it was revealed that the officer, Mr. Rehr, discussed Spero's intended move to Delaware with petitioner and had signed the papers granting permission in Spero's presence. However, Rehr insisted that he instructed petitioner not to depart until a "bad check" charge was cleared up. Later, on direct examination, Spero testified to another version of this conversation. It was Spero's belief that the signing of the papers constituted permission to leave for Delaware where he had procured a good job.

The probation officer also testified that on one occasion petitioner failed to report as required. (R at 20) On direct examination Spero explained that he had packed his belongings and pre-pared his entire family for the trip back to New York but could not get gasoline because of the shortage at that time. (R at 103)

In addition, the original copy of an automobile rental agreement was placed into evidence by the officer. (R at 35) The contract revealed that the car was to be returned on February 18, 1974. Mr. Rehr testified to having seen petitioner's wife in that same automobile, parked in front of the court house on March 25, 1974, moments after petitioner had denied having had any knowledge of such a car.

This evidence was properly received and would have been competent at any criminal fact-finding proceeding. It is sufficient to warrant a finding that petitioner violated the terms of his probationary sentence. However, the remainder of petitioner's record illustrates the serious perils a defendant may be exposed to at this critical stage of the criminal process. Although the problem has been recognized by some courts,[2] little has actually been done to assure that the evidentiary practices at such hearings conform to constitutional requirements. A renewed consideration of this problem, as illustrated by the case at bar, may serve to shed light upon this neglected area of the law.

Six of the nine major charges made by the witness against petitioner Spero were based entirely upon hearsay and double hearsay allegations. (R at 15–19, R at 21–60) Spero's counsel strenuously and repeatedly objected to the prosecution's reliance upon such evidence, reminding the court that his client's liberty was in jeopardy. He insisted that it was impossible to cross-examine the witness in a manner which would enable the

2. As early as 1938 the Court of Appeals for the Second Circuit recognized that:
> While a probationer is not entitled to a formal trial, he is entitled to a hearing and to have the conclusions upon which the court acts based upon relevant proven facts. The decision must not rest upon whim or caprice or suspicion of misconduct not proven.

*United States v. Van Riper*, 99 F.2d 816 at 819 (2d Cir. 1938). *In accord, Douglas v. Buder*, 412 U.S. 430, 93 S.Ct. 2199, 37 L.Ed. 2d 52 (1973), *People v. Sanders*, 64 Cal.App. 1, 220 P. 24 (1923), *People v. Warren*, 314 Ill.App. 198, 40 N.E.2d 845 (1942), *Ex parte Bobowski*, 313 Mich. 521, 21 N.W.2d 838 (1946), *Williams v. Harris*, 149 P.2d 640 (Utah 1944).

court to ascertain the truth. Petitioner's counsel further stressed that the use of such evidence constituted a deprivation of due process of law to his client. (R at 21) The Judge, without addressing himself to the constitutional questions, decided that the intent of the legislature when enacting ⋅ N.Y.Criminal Procedure Law § 410.70(3) (McKinney 1971) was to permit the introduction of any relevant evidence, including hearsay. (R at 32) Accordingly, the probation officer was permitted to enter into evidence a variety of hearsay·statements.[3]

ʹ The shoddy caliber of ˙this evidence, which indeed was relied upon in reaching the finding of facts resulting in petitioner's incarceration, is alarming indeed. Although there was a residuum of legal evidence found in the record, this Court is of the belief that the informal proceeding employed here invites abuses rising to constitutional dimensions. *See Matter of Caroll v. Knickerbocker Ice Co.*, 218 N.Y. 435, 113 N.E. 507 (1916).

■ In *Goldberg v. Kelley*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) the Supreme Court provided guidelines to aid in the determination of whether the required standards for pro-

cedural due process have been met in a given situation. It was explained that:

> Consideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as the private interest that has been affected by governmental action.

*Goldberg v. Kelley, supra* 397 U.S. at 262–263, 90 S.Ct. at 1018.

■ At one time it was alleged that the interest of a probationer in the continuance of a probationary sentence was not sufficient to warrant the protection of due process.[4] However, by this time the principle has been well established that the Fourteenth Amendment guarantee assuring that no person shall be deprived of his liberty without due process of law is applicable to probation revocation. *Mempa v. Rhay*, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967). The precise governmental function to be performed at such a hearing is the determination of whether a man can continue to live in freedom or whether he will be confined to prison; thus the interest of the probationer in preserving his liberty is of the highest order.

Because the "private interest" of the petitioner is a key to the determination

---

3. The probation officer was permitted to testify about telephone conversations between two parties neither of whom were present. (R at 26) He also described the activities of petitioner as they were told to him by persons not present. Officer Rehr placed into evidence such items as photocopies of bench warrants offered to show the actual occurrence of the crime charged (one was so unclear that it could not be deciphered by anyone present) (R at 18), copies of auto lease agreements (R at 39), copies of bills, and a bench warrant for a traffic infraction issued at a time when petitioner was already in custody.

4. At one time it was maintained that a convicted man had waived his due process rights. *Caritativo v. California*, 351 U.S. 972, 76 S.Ct. 1042, 100 L.Ed. 1490 (1956) *Solesbee v. Barkcom*, 339 U.S. ·9, 70 S.Ct. 457, 94 L.Ed. 604 (1949). Alternatively, it was suggested .that probationer's liberty was

"conditional" at best and was therefore not worthy of protection. *See* Bassett, *Discretionary Power & Procedural Rights in the Granting* and *Revoking of Probation.* 60 J. Crim.L., C. & P.S. 479 (1969). The most frequently offered explanation of why a probationer should not be extended due process protection was founded upon the right-privilege distinction. It was reasoned that since probation is a "privilege" or an "act of grace" it did not entitle a defendant to the guarantee of due process of law. *Escoe v. Zerbst*, 295 U.S. 490, 492, 55 S.Ct. 818, 79 L.Ed. 1566 (1935), *People v. Oskroba*, 305 N.Y. 113, 111 N.E.2d 235 (1953). That theory, however, has been put to rest by the Supreme Court in *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973) where the Court noted that "a probationer can no longer be denied due process, on reliance on the dictum . . . that probation is an 'act of grace.'" 411 U.S. at 783, 93 S.Ct. at 1760.

of the necessary extent of due process protection, it is important to distinguish between the interests which are at stake at the various types of post conviction hearings. The Supreme Court in *Mempa v. Rhay, supra,* recognizing the necessity for counsel at a proceeding for revocation of probation, held that the appointment of counsel for an indigent is required at every stage of a criminal proceeding where any substantial right of a defendant may be affected. The holding there applies only to a situation, such as the one at bar, where sentencing for the underlying crime is deferred until probation is revoked. This type of hearing requires greater protection than a second kind of probation revocation hearing at which the defendant receives a sentence which was previously determined at his trial but held in abeyance until the sentence of probation has been revoked. At such a revocation hearing, where the alternative sentence has already been decided upon, the Supreme Court has decided that a case by case consideration should be made to determine the necessity of appointing counsel to an indigent defendant. *Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973). Post conviction hearings are also held to determine whether a term of parole should be rescinded. The highest Court has likened the parole revocation hearing to the second type of probation revocation hearing, since in both cases the defendant has already received an alternate sentence. *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). These two kinds of post conviction hearings are distinguishable from the deferred sentence proceeding of petitioner Spero. The lack of any previously determined sentence has led the Supreme Court to view a deferred sentence probation revocation hearing as part of the criminal proceeding. *Mempa v. Rhay, supra.* Although the interest of the defendant in each situation is great enough to warrant due process protection, it is the probationer at the deferred sentence probation revocation hearing whose interest is the most urgent and who stands to lose the most. Accordingly, such a situation requires more stringent procedures to assure the guarantee of a meaningful hearing.

Once it has been determined that a probationer is guaranteed due process of law, it must then be decided what procedures are required to meet that standard. Although "[m]any controversies have raged about the cryptic and abstract words of the Due Process Clause there can be no doubt that at a minimum they require that deprivation of . . . liberty . . . be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306 at 313, 70 S.Ct. 652, at 656, 94 L.Ed. 865 (1950).

The former New York Code of Criminal Procedure § 935 (repealed 1971) provided that the sole requirement at a deferred sentence probation revocation hearing was "an opportunity to be heard." That phrase was held to contemplate notice to the probationer of the violation charged, and an opportunity to refute those charges. A formal procedure was not required. *See People v. Oskroba,* 305 N.Y. 113, 111 N.E.2d 235, reargument denied 305 N.Y. 696, 112 N.E.2d 778 (1953). This limited hearing requirement was in accord with the holding in *Burns v. United States,* 287 U.S. 216, 53 S.Ct. 154, 77 L.Ed. 266 (1932) that the only question for review at a violation of probation proceeding was the abuse of judicial discretion. However, following the "right to counsel" ruling in *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), there was increasing recognition that defendants at post conviction hearings may require broader protection than a simple informal hearing without counsel present. In *People v. Reynolds,* 25 A.D.2d 487, 266 N.Y.S.2d 604 (4th Dept.1966) it was held that pursuant to New York Code of Criminal Procedure § 935 (repealed 1971) a defendant charged with a violation of probation is not only

entitled to a hearing but to counsel at all stages of the proceeding. One year later the Supreme Court voiced its agreement, and held that this right was constitutionally mandated. Thus, all indigent defendants at deferred sentence probation revocation hearings were to be represented by counsel. *Mempa v. Rhay, supra.*

Currently, N.Y. Criminal Procedure Law § 410.70 (McKinney 1971) sets forth a more detailed hearing proceeding which includes the right to counsel, the right to present evidence and the right to cross-examine the adversary witnesses. However, the New York procedure retains many characteristics which continue to distinguish it from a full criminal trial. The hearing remains a summary one, with no jury present. A violation may be proven by means of any relevant evidence not legally privileged. The commission of a crime, in and of itself, with no need for a conviction, constitutes grounds sufficient to revoke probation. N.Y. Criminal Procedure Law § 410.10 (McKinney 1971). The American Bar Association Project on Standards for Criminal Justice has warned of the danger of abuse inherent in such an informal probation proceeding where the rules of admissibility are relaxed, no jury is present and the prosecution has a lesser burden of proof. ABA Standards For Criminal Justice, Probation, § 5.3 (1970). The record which this court has reviewed in the case at bar illustrates that these hypothetical concerns often emerge as unfortunate realities. Such practices may have a prejudicial effect and deprive the defendant of the basic fundamental fairness required for a meaningful hearing.

It appears that the highest Court has not yet addressed itself to the admissibility and use of hearsay at deferred sentence probation revocation hearings. It was noted in *Morrissey v. Brewer, supra,* that a parole revocation hearing should be flexible enough to consider evidence including letters, affidavits, and other material that would not necessarily be admissible at a criminal trial. However, the Court noted that a parole hearing, unlike the instant case, is clearly not a part of the criminal proceeding. Some indication of the Supreme Court's view of the evidentiary requirements of a deferred sentence probation hearing may be found in *Mempa v. Rhay, supra.* While evaluating the fairness of the revocation hearing under scrutiny there, the Court pointed to the admission of hearsay evidence and the lack of cross-examination as reasons why counsel should be required for all indigent defendants at such proceedings. The value of counsel is undoubtedly diminished if these practices are permitted to continue.

It has been advanced that the danger inherent in the use of hearsay becomes less significant at a hearing where no jury is present, since the judge is capable of distinguishing which evidence has the requisite degree of reliability.[5] Davis, *Hearsay in Non Jury Cases,* 83 Harv.L.Rev. 1362 (1970). However, the instant case demonstrates that the hearing Judge failed to distinguish the reliable evidence from gross hearsay. The Judge found that the People had proven by a preponderance of the "credible" evidence that the defendant failed to report to the probation officer, that he left the jurisdiction without permission, that he failed to avoid injurious and vicious habits and that he did not support his dependents and meet other family responsibilities.[6] But four of the five

---

5. Proponents of this viewpoint often argue the lesser need for exclusionary rules in nonjury cases. *See* Davis, *An Approach to Evidence In Nonjury Cases.* 50 A.B.A.J. 723 (1964). Despite the fact that only 3% of today's trials involve juries, the new Federal Rules of Evidence do not provide for any distinction in evidentiary standards between jury and nonjury trials.

6. It is difficult to comprehend the basis for finding that Spero failed to support his dependents and meet his family responsibilities. The probation department did not charge pe-

findings of fact which constituted petitioner's "injurious or vicious habits" were founded upon incompetent evidence. These were the most serious charges made against Spero and there.is no indication that the Judge at any time considered whether the evidence had the required "indicia of reliability" before using it to reach a conclusion.[7] *See Mancusi v. Stubbs*, 408 U.S. 204, 92 S. Ct. 2308, 33 L.Ed.2d 293 (1972).

Laxity of evidentiary standards gives rise to the very real danger that a finding will be made against a defendant based upon false information. This was very nearly the situation in which Mr. Spero found himself. An earlier hearing took place when Mr. Rehr was not present. But another officer testified that Mr. Rehr said petitioner should not be let out on the street again since he had taken out a loan for $2,400 to purchase property and had misused the money received. Ultimately that charge was dropped since it was found that there was no truth to it. Had the charge not been dropped it too would likely have been included in the findings made against defendant.

■ This failure on the part of the hearing Judge to distinguish the reliable evidence from the hearsay is particularly disturbing since a second purpose of the hearing was the sentencing of the defendant for his original convictions. Spero claims to have given a plea of guilty in reliance upon a promise of probation. As a result of the probation revocation, the actual determination of the length of petitioner's incarceration was founded upon his alleged behavior while on probation, behavior "proved" by the most questionable kind of evidence. An awareness of this situation lead the New York Court of Appeals to recently acknowledge that ". . . in light of the overwhelming percent of dispositions via plea negotiation, guilt or innocence may not be deemed by some defendants to be of prime concern. In practical terms, sentencing assumes monumental significance because it determines the price society will exact for the particular transgressions involved" (citations omitted) *People v. Perry*, 36 N.Y.2d 114, 365 N.Y.S.2d 518, 324 N.E. 2d 878 (1975). *See Mempa v. Rhay, supra*, 389 U.S. at 136, 88 S.Ct. 254, 19 L. Ed.2d 336. The fact that so many sentences are handed down as a result of probation revocation hearings serves to emphasize the need for adequate evidentiary requirements to guard against conjecture, supposition and innuendo.[8] It appears that neither the Supreme Court nor the New York Court of Appeals has as yet held that the full panoply of constitutional rights should be applied to the sentencing process. *See Williams v. New York*, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337, affirming 298 N.Y. 803, 83 N.E.2d 698 (1949), *People v. Perry, supra*. It is reasoned that once the defendant is convicted the adversarial stage is over, and both the government and the defendant are concerned with proper placement. It is presumed that at the post conviction stage the probation department is functioning on behalf of the defendant. *People v. Peace*, 18

---

titioner with this violation. In fact, the record reveals that although Mr. Rehr did little to help Spero find employment, he managed to borrow money and go to school to qualify for a license to drive a tractor trailer. Once he had the license he was unable to find employment in New York due to his prior record. He left for Delaware with his entire family since an acquaintance in the United States Justice Department helped him to obtain a job there. In Delaware he was employed but was forced to give that job up to return to New York and answer these charges against him.

7. In many instances the mitigating circumstances surrounding the less serious charges would be given more careful attention if not for the introduction of unreliable evidence of more "spectacular" acts.

8. The New York Court of Appeals has also recognized as "beyond dispute" that the sentencing process is a crucial stage of the criminal process which rises to constitutional dimension. *People v. Perry*, 36 N.Y.2d 114, 365 N.Y.S.2d 518, 324 N.E.2d 878 (1975).

N.Y.2d 230, 273 N.Y.S.2d 64, 219 N.E.2d 419 (1966). However, the record of the case at bar demonstrates that unlike the usual role of the probation department, offering guidance in sentencing, here the department acted as an arm of the prosecution. Petitioner's hearing was most certainly a full adversary proceeding. Mr. Rehr functioned solely as a witness against the defendant, making no mention of any knowledge of Spero's special situation. Since a probation revocation hearing is conducted in a true adversary manner, procedural due process surely requires greater safeguards than are now in use.

■ In the instant case Spero's probation was not withdrawn because he was found to have committed a crime while on probation. In order to show the commission of a crime, the prosecution would have been required to prove that the underlying act upon which the charge was based actually took place. *People v. Compton*, 38 A.D.2d 788, 328 N.Y.S.2d 72 (4th Dept. 1972). It is not ground for revocation that petitioner has merely been charged with a crime. *United States v. Webster*, 161 U.S.App. D.C. 1, 492 F.2d 1048 (D.C.Cir.1974). Although the People's case continually alludes to acts which were said to constitute crimes in Delaware and New York, no effort was made to actually prove the elements, including the intent, required to demonstrate that a criminal act had been committed, even though such a showing would have resulted in an automatic revocation of probation. N.Y. Criminal Procedure Law § 410.10 (McKinney 1971). Instead, however, most of petitioner's alleged activities were placed into the category of failure to avoid "injurious and vicious habits." Probationary conditions of this broad and uncertain nature have been criticized as "so vague or ambiguous as to give no real guidance" as to the kind of behavior which must be avoided. ABA Standards For Criminal Justice, Probation, § 3.2 (1970). This phrase, "injurious and vicious", functions as a catch-all which permits broad discretion on the part of the probation officer and the judge at the expense of the most well intentioned probationer. It constitutes yet another danger found in the current method of revoking probation.

An awareness of these numerous problems convinces this Court that the procedures currently in use in a deferred sentence probation revocation proceedings do not meet the constitutional requirement of a meaningful hearing, required before one's liberty can be so seriously impaired.

■■ Closely allied to the hearsay question, is the Sixth Amendment right of a criminal defendant to confront the witnesses against him. This right has been held binding upon the States under the due process clause of the Fourteenth Amendment. *Pointer v. Texas*, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). Although the Sixth Amendment guarantee applies only to criminal prosecutions, confrontation has been held a requirement in quasi-criminal proceedings, *Morrissey v. Brewer, supra* (parole revocation) *In re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967) (juvenile proceeding) *In re Penn*, 143 U.S. App.D.C. 248, 443 F.2d 663 (1970) (civil commitment of mental patient) as well as civil and administrative cases based upon the due process clause itself. *Goldberg v. Kelly, supra* (termination of welfare benefits), *Willner v. Committee on Character and Fitness*, 373 U.S. 96, 87 S.Ct. 1175, 10 L.Ed.2d 224 (1963) (disbarment), *Greene v. McElroy*, 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959) (Security Clearance), *Jay v. Boyd*, 351 U.S. 345, 76 S.Ct. 919, 100 L. Ed. 1242 (1956) (selective service proceedings). There is no doubt at this time that the right of confrontation extends to a hearing such as the one at bar. The question which does remain to be determined is the breadth of this right in its application to probation revocation. In *Morrissey v. Brewer supra*, the Court held that the defendant at a simple parole revocation hearing has

"the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation)." 408 U.S. at 489, 92 S.Ct. at 2604. *See Specht v. Patterson,* 386 U.S. 605, 87 S.Ct. 1209, 18 L.Ed.2d 326 (1967). Furthermore, the statute which sets out the requirements for a probation revocation hearing in New York specifies that "The defendant may cross-examine witnesses . . .". New York Criminal Procedure Law § 410.70(3) (McKinney 1971) As petitioner's attorney emphatically made known at the hearing, it is an impossible task to cross-examine hearsay. There is still much disagreement as to whether the use of hearsay testimony constitutes a denial of the right of confrontation. *See* Graham, *The Right of Confrontation and The Hearsay Rule: Sir Walter Raleigh Loses Another One,* 8 Crim.L.B. 99 (1973).

In a variety of situations it has been held that the admission of and reliance upon hearsay does constitute a deprivation of confrontation. *Favre v. Henderson,* 464 F.2d 359 (5th Cir.) *cert. denied,* 409 U.S. 942, 93 S.Ct. 235, 34 L.Ed.2d 193 (1972), *State v. Bankston,* 63 N.J. 263, 307 A.2d 65 (1973) *State v. Newell,* 462 S.W.2d 794 (Mo.1971), *People v. Harris,* 41 Mich.App. 389, 200 N.W.2d 349 (1972). Although petitioner here actually did cross-examine Mr. Rehr six of the accusations made by Rehr were not within his personal knowledge and were founded entirely upon hearsay and double hearsay information. This resulted in much of the cross-examination being no more than a meaningless exercise. All that Mr. Rehr could do was to repeat what he had been told by others. There was no opportunity to be confronted with those supplying the incriminating accusation, no chance to cross-examine their stories and no possibility of assessing their demeanor and credibility. *See Douglas v. Alabama,* 380 U.S. 415, 418, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965). If the Sixth Amendment right to confrontation permits the above procedure when a man's liberty is at stake, then indeed it guarantees little. Fortunately, however, the Supreme Court has recognized a broader view of this right. For example, in *Parker v. Gladden,* 385 U.S. 363, 87 S.Ct. 468, 17 L.Ed. 420 (1966) it was held a denial of confrontation for the bailiff to speak disparagingly of the defendant to the jury. *Cf. United States ex rel. Owen v. McMann,* 435 F.2d 813, 817 (2nd Cir. 1970).

A contention often made by defendants in criminal cases is that by withholding of the source of information used in a sentencing recommendation report the right to confrontation is violated. The Supreme Court has held, however, that such a refusal is within the perimeter of what is constitutionally permissible. *Williams v. New York, supra.* However, it should be noted again that the sentencing procedure referred to in Williams was not an adversary proceeding as was petitioner's hearing. The New York Court of Appeals, considering that same question recently, found that "the key is whether the defendant has been afforded an opportunity to refute those aggravating factors which may have negatively influenced the court." *People v. Perry supra.* Meaningless cross-examination and a failure to produce the witnesses with the most damaging testimony does not satisfy even that standard. To approve the continuation of such a practice would be to encourage the prosecution to rely on "one witness" cases where the probation officer mouths the words of those he has never seen and sometimes has never spoken to.

■ Society has a clear and definite stake in the outcome of a post conviction hearing. *Morrissey v. Brewer, supra,* 408 U.S. at 484, 92 S.Ct. 2593. In each instance a decision has already been made that one who has been convicted of a crime is worthy of a chance to live a normal and useful life outside of prison walls. To confine such a person to an institution because of possibly erroneous information is in direct contradiction

with the Supreme Court's belief that "fair treatment . . . will enhance the chance of rehabilitation by avoiding reactions to arbitrariness." *Morrissey v. Brewer supra,* 408 U.S. at 484, 92 S. Ct. at 2602. It is the opinion of this Court that the unlimited and undiscriminating use of hearsay evidence at a fact finding proceeding increases the possibility of decisions based upon erroneous information. The same standards of admissibility of evidence employed at a criminal trial should be applied to a deferred sentence probation revocation hearing.[9] In answer to those who will point to the added administrative inconvenience, the Supreme Court emphatically declared that;

[T]he Constitution recognizes higher values than speed and efficiency . . . . The Due Process Clause in particular . . . [was] designed to protect the fragile values of a vulnerable citizenry from the overbearing concern for efficiency . . . .

*Stanley v. Illinois,* 405 U.S. 645, at 656, 92 S.Ct. 1208, at 1215, 31 L.Ed.2d 551 (1972). However, since counsel is already present at such hearings, the added evidentiary requirements would add little burden. In this regard it is to be noted that total due process protection at a post conviction hearing has already been extended to one group of persons. In *Specht v. Patterson, supra,* a defendant convicted of a crime categorized under a sex offender's statute was subject to a second fact finding hearing to determine the appropriate type of sentence to be pronounced. The Supreme Court strongly asserted its agreement with the Third Circuit and quoted the following:

At such a hearing the requirements of due process cannot be satisfied by partial or niggardly procedural protections. A defendant in such a proceeding is entitled to the full panoply of the relevant protections which due process guarantees in state criminal proceedings. He must be afforded all those safeguards which are fundamental rights and essential to a fair trial, including the right to confront and cross-examine the witnesses against him."

*United States ex rel. Gerchman v. Maroney,* 355 F.2d 302, 312 (3rd Cir. 1966); *Specht v. Patterson, supra,* 386 U.S. at 609–610, 87 S.Ct. at 1212.

The record of the deferred sentence probation revocation hearing of petitioner Spero points as well to the need for similar safeguards regarding confrontation and cross-examination. In addition, an evidentiary standard is called for which will result in a more discriminating determination of which allegations merit reliance in making a finding of fact. The Sixth and Fourteenth Amendments require no less.

However, in light of the existence of some competent evidence tending to indicate a violation of the probationary sentence by Spero this Court is constrained to deny the petitioner's application for relief.

Accordingly, the petition is denied.

---

9. This Court is not unaware of the reform movement among those who would like to see the hearsay rule and its numerous exceptions replaced by a standard of reliability. This standard would be built around a test similar to Judge Learned Hand's, permitting the court to admit "the kind of evidence on which responsible persons are accustomed to rely in serious affairs." *See* Davis, *An Approach To Evidence in Nonjury Cases,* 50 A.B.A.J. 723 (1964), Smith, *The Hearsay Rule and the Docket Crisis,* 54 A.B.A.J. 231 (1968). It is not being suggested by this Court that the barring of hearsay evidence *per se* is constitutionally required at a deferred sentence probation revocation hearing. Rather, it is maintained that whatever standards for admissibility of evidence be deemed constitutionally required to protect the criminal defendant at his trial likewise be employed at a deferred sentence probation revocation proceeding.